**F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant Cross-Appellee,**

v.

**SHELLCAST CORPORATION, a corporation, Defendant-Appellee Cross-Appellant.**

**F. Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,**

v.

**SOUTHERN FOUNDRY CORPORATION, Defendant-Appellee.**

Nos. 77-3102, 77-3169.

United States Court of Appeals, Fifth Circuit.

April 16, 1979.

Carin Ann Clauss, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., Bobbye D. Spears, Regional Sol., Birmingham, Ala., Nancy L. Southard, Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant cross-appellee.

William B. White, Jr., Stephen E. Brown, Linda A. Friedman, Birmingham, Ala., Abner W. Feinberg, Jersey City, N. J., for Shellcast Corp.

Vaughn Stelzenmuller, Birmingham, Ala., for Southern Foundry Corp.

---

Before GOLDBERG, Circuit Judge, SKELTON,* Senior Judge, and FAY, Circuit Judge.

GOLDBERG, Circuit Judge:

Section 8(a) of the Occupational Safety and Health Act of 1970 [hereinafter the "Act" or "OSHA"], 29 U.S.C. § 657(a) authorizes the Secretary of Labor [hereinafter the "Secretary"] "to enter without delay and at reasonable times" any workplace and "inspect and investigate" the workplace. Pursuant to this section compliance officers with the Occupational Safety and Health Administration [hereinafter "OSHA"] went to two foundries belonging to appellees and requested permission to inspect. Each company refused to allow the inspection. The compliance officers then obtained search warrants from a federal magistrate authorizing them to inspect the foundries. Upon learning of these warrants appellees wrote letters to OSHA stating that they questioned the validity of the warrants and would continue to refuse OSHA officials access to their foundries. The Secretary then filed complaints in federal district court asking the court to order appellees to permit the inspections. Appellees opposed the complaints and moved to have the warrants quashed. In addition, appellee Shellcast filed a counterclaim seeking a declaration that section 8 of the Act is unconstitu-

tional. The district court considered the two cases together and entered a single set of findings of fact and conclusions of law. The court denied the Secretary's petitions for injunctive relief and granted appellees' motions to quash the warrants. In addition, the court denied Shellcast's motion for a declaration that section 8 of the Act was unconstitutional. The Secretary appealed from the judgments against him and appellee Shellcast cross-appealed the court's ruling that section 8 of the Act was not unconstitutional.

After the district court decided these cases this court decided the case of *Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668 (5th Cir. 1978). Our decision in *Gibson's* compels us to hold that the district court had no jurisdiction to consider the complaints filed by the Secretary in both these cases.[1]

In *Gibson's* we held that federal district courts do not have subject matter jurisdiction to consider the Secretary's request for an injunction compelling an employer to permit an administrative search conducted pursuant to section 8(a) of the Act.[2] The instant cases are identical to *Gibson's* except that here the Secretary seeks an injunction to compel obedience to a warrant he has already been issued.[3] In *Gibson's* the Secretary had no warrant. This differ-

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. As in *Gibson's*, a defendant company in the instant cases filed a counterclaim asserting its rights under the fourth amendment. The court in *Gibson's* noted that while a federal court would have jurisdiction to consider the counterclaim if it were brought as an independent action, *see Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the counterclaim could not cure or survive the lack of jurisdiction on the face of the Secretary's complaint. *Gibson's, supra*, at 672 and n.5, citing *Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Similarly, the motions to quash the warrants and the counterclaim of appellees in the instant cases must be dismissed by the district court along with appellant's original complaints because the court lacks jurisdiction over the cases. This dismissal is without prejudice to appellee's claims. Appellees are free to submit their motions and counterclaim as independent

actions, with the court at that time making an independent assessment of the subject matter jurisdiction for those claims. *Id.*

2. Our decision in *Gibson's* was not followed by the Seventh Circuit in *In re Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1344 (7th Cir. 1979).

3. As in *Gibson's*, in the instant cases we do not reach the question of whether a federal magistrate has jurisdiction to issue an OSHA search warrant. In *Gibson's* we noted:

Such a warrant could issue ex parte and without notice before or after entry is sought, thereby preserving the element of surprise. *Barlow's*, 436 U.S. at 316, 98 S.Ct. at 1822. Whether this fact is sufficient to distinguish the jurisdictional considerations in this case from those in a proceeding for a warrant is an issue we need not decide today.

*Gibson's, supra*, at 673 n.6.

We note that the evidence of Congress's concern about the constitutionality of OSHA

ence does not change the result of the jurisdictional analysis we conducted in *Gibson's*.[4]

In *Gibson's* we based our conclusion on our reading of the Act as impliedly precluding jurisdiction for injunctive actions brought by the Secretary to exercise his authority under section 8(a). In that case we noted that the Act "on its face, does not authorize the Secretary to [sue] for an injunction to compel employers to submit to search under section 8(a)." *Gibson's, supra,* at 672. We said that Congress considered the "element of surprise" a crucial component of OSHA searches,[5] and that this ele-

---

searches, as noted in *Gibson's* at 673, when viewed in connection with the Supreme Court's ruling in *Barlow's, supra,* argues strongly for the position that federal courts do have jurisdiction to issue OSHA search warrants. We also note that numerous courts have reached this result, and that none have held otherwise. *See In re Establishment,* note 2 *supra,* and *Empire Steel Manufacturing Co. v. Marshall,* 437 F.Supp. 873 (D.Mont.1977). It is important to note, however, that the provision or preclusion of jurisdiction for the issuance of search warrants is quite a different matter from the provision or preclusion of jurisdiction for an injunction, which is the only issue in this case. *Cf. United States v. Holland,* 552 F.2d 667, 674–75 (5th Cir. 1977) (even if district court has jurisdiction to issue search warrant, it has no jurisdiction to issue order in aid of investigation by Postal Service), vacated on other grounds, 565 F.2d 383 (1978) (en banc).

4. The court in *Gibson's* wrote:

The legislative history of OSHA indicates that Congress may have omitted to provide jurisdiction for injunctive relief here precisely because of doubts as to the constitutionality of such provision. A sponsor of OSHA, Congressman Steiger, remarked during debate, "I would add that in carrying out inspection duties under this act, the Secretary, of course, would have to act in accordance with applicable constitutional protections." 116 Cong.Rec. 38709 (1970). We think this congressional concern relevant to the determination of the intent behind the omission of · a jurisdictional provision under section 8(a). . . . Congress knew full well how to grant jurisdiction, and where it is not unlikely that Congress omitted such a grant to avoid possible conflict with the Constitution, we can scarcely infer one.
Id. at 673.

In this passage the court apparently meant that Congress feared that warrantless, unconsented searches under the Act might violate the fourth amendment, and that Congress may have precluded jurisdiction for injunctive suits enforcing such searches for this reason. Thus, one might argue that Congress did not intend to preclude injunctive suits to enforce searches based on a warrant because such searches would be less constitutionally suspect. We find this argument unpersuasive on the question of jurisdiction for injunctive suits.

At the outset we note that the *Gibson's* court's brief observation about Congress's constitutional concerns did not appear to be an actual basis for that court's conclusion that Congress had not granted jurisdiction for injunctive suits. Rather, the observation seemed more to be speculation about why Congress had not granted the jurisdiction—that is, speculation more about Congress's motives than about its actions. In any case, we find the passage puzzling. First, one could hardly argue that Congress feared that a grant of jurisdiction, in itself, would violate the fourth amendment of the constitution. More likely, the legislative history cited by the court indicates that certain members of Congress feared —correctly, as demonstrated by *Barlow's, supra*—that unconsented searches conducted without a prior judicial determination of probable cause might be unconstitutional. But of course a court authorizing an unconsented search after an adversary proceeding for an injunction is certainly no less likely, and is probably more likely, to make a valid constitutional determination of probable cause, than would the same court after only an *ex parte* warrant proceeding.

We find it more likely that Congress did not provide jurisdiction for injunctive suits enforcing warrants because it thought that either warrants would not be constitutionally required or, if required, would be self-executing. The former argument was the position of the Secretary in *Barlow's, supra,* 436 U.S. at 311, 98 S.Ct. at 1819 and in earlier stages of the instant cases. That this view may have been shared by Congress is indicated by the fact that the Act nowhere provides for, or even mentions, search warrants. But regardless of why Congress did not mention in the Act injunctive suits to enforce warrants, the important facts are that such suits were not mentioned, would be superfluous, and are as contrary to the surprise inspection policy of the Act as the injunction sought in *Gibson's*. Therefore, we do not see the existence of warrants in the instant suits for injunctive relief as a basis for distinguishing our ruling in *Gibson's*.

5. In *Gibson's* we wrote:

That Congress did not write section 8(a) to allow the injunction sought here is apparent from the provision authorizing the Secretary "to enter without delay." These words were inserted by amendment in the House and were intended to preserve the element of

ment is "lost by the time the Secretary obtains an injunction." *Id.* at 673. We also noted "the explicit provision for district court jurisdiction elsewhere in" the Act,[6] and observed that in several other statutes comparable to the Act, Congress had explicitly provided jurisdiction for injunctions requiring an employer to submit to inspection. *Id.* We concluded:

> Given the congressional awareness and concern illustrated by the provisions of OSHA and the other acts we have just discussed, we think the natural inference to be drawn from the omission of any grant of jurisdiction for the Secretary to obtain an injunction under section 8(a) is that no such grant was intended.

*Id.* at 675.

All of these grounds—the Congressional intent in section 8(a) for undelayed surprise searches, the inclusion of a limited number of explicit jurisdictional grants in the Act and thus the implied preclusion of all others, and the explicit jurisdictional grants in other acts for inspection injunctions—apply in the instant cases as forcefully as in *Gibson's.* Moreover it seems likely that Congress, desiring an enforcement scheme based on surprise and undelayed searches, would very much prefer immediate execution of duly-issued *ex parte* warrants to the litigation-ladened delays urged on us by the search-shy Secretary in this case. By denying jurisdiction for injunctive suits initiated

by the Secretary, Congress postpones and reduces the adversary litigation that otherwise might undermine the efficient and speedy implementation of the Act. In addition, Congress puts pressure on the Secretary to implement the Act unburdened by the excessive bureaucratic caution and paperwork which plague so much of our government. The simple fact is that the injunction sought by the warrant-bearing Secretary in this case is redundant. The warrant already issued by the magistrate fully authorizes the Secretary to "enter without delay" and "inspect and investigate" the premises of even unconsenting employers.[7] The injunctions sought in these cases are not only redundant but also conflict with the explicit Congressional policy in section 8(a) that OSHA inspections be undelayed and a surprise. We conclude that a finding of no jurisdiction in the instant cases is an a fortiori result of our analysis in *Gibson's.*

We vacate the judgments of the district court and remand the cases with the instruction that the Secretary's complaints be dismissed for lack of jurisdiction.

VACATED and REMANDED with instructions to DISMISS.

---

surprise deemed essential to inspections under the section. 116 Cong.Rec. 38709 (1970) (remarks of Congressmen Galifianakis and Steiger). That surprise was considered crucial to such inspections is unequivocally indicated by the provision imposing criminal penalties for giving without permission advance notice of an inspection. 29 U.S.C. § 666(f) (1976). *See Marshall v. Barlow's, Inc.,* 436 U.S. at 317, 98 S.Ct. at 1823. *Id.* at 672–73.

**6.** We cited sections of the Act granting jurisdiction for orders involving the Secretary's subpoena power (section 8(b) of the Act, 29 U.S.C. § 657(b) (1976)), for orders involving the compensation of employees discriminated against for filing complaints under OSHA (section 11(c)(2) of the Act, 29 U.S.C. § 660(c)(2) (1976)), and for orders restraining conditions that pose an imminent danger to employees (section 13(a) of the Act, 29 U.S.C. § 662(a) (1976)). *Gibson's,* at 673–674.

**7.** We see a search warrant as a full and complete judicial authorization for a search—potentially subject to a presearch attack on constitutional grounds, of course, *cf. Lankford v. Gelston,* 364 F.2d 197 (4th Cir. 1966), but otherwise binding on the employer who does not consent to the search. If necessary, physical force is available for the execution of the warrant. *See See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943 (1967) ("administrative entry, without consent, upon the portions of commercial premises which are not open to the public may . . . be compelled through . . . physical force within the framework of a warrant procedure"). And of course the employer who attempts to resist execution of the warrant risks being held in contempt. 28 U.S.C. § 636(d). *See In re Establishment,* note 2 *supra.*