Ray MARSHALL, Secretary of Labor

v.

HUFFHINES STEEL COMPANY.

No. CA 3-79-0842-G.

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 27, 1979.

See also, D.C., 478 F.Supp. 986.

Barbara G. Heptig, Dallas, Tex., Carin Ann Clauss, Washington, D. C., James E. White, Jack F. Ostrander, U. S. Dept. of Labor, Dallas, for plaintiff.

Robert E. Rader, Jr., McCarty & Wilson, Ennis, Tex., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PATRICK E. HIGGINBOTHAM, District Judge.

This is an action by the Secretary of Labor seeking an order holding defendant

in contempt of this court for its refusal to comply with an administrative inspection warrant issued pursuant to the Occupational Safety and Health Act, 29 U.S.C. §§ 651 et seq. Defendant asserts that the warrant is invalid inasmuch as it was obtained ex parte and without an adequate showing of probable cause, and that the scope of the warrant is overly broad.[1]

## 1. Facts.

On May 30, 1979, Occupational Safety and Health Administration (hereinafter "OSHA") Safety Compliance Officer Susan J. Darland attempted to conduct an inspection of the premises of Huffhines Steel Company in Dallas, Texas. This attempt at inspection had been prompted by a written complaint by a Huffhines employee alleging numerous safety hazards within the Huffhines plant. Ms. Darland advised Huffhines of her intention to conduct a complete safety inspection, pursuant to the complaint, of the three shops and one office building which comprise the Huffhines facility. Ms. Darland was refused permission to inspect by Alan Huffhines, president of Huffhines Steel.

On June 21, 1979, Ms. Darland, following consultation with the regional office of the Solicitor of Labor, filed an ex parte application with the United States Magistrate for an administrative inspection warrant. Ms. Darland submitted an affidavit to the Magistrate setting forth the above facts together with a list of the alleged safety hazards. The affidavit provided the Magistrate with substantially all the information submitted to OSHA by the Huffhines employee on OSHA's official complaint form, with the exception of the location of the alleged hazards within the Huffhines facility.

The Magistrate issued the requested warrant on the form set forth by this court in its Miscellaneous Order No. 23 of December 4, 1978. On June 25, 1979, George Davis, another OSHA Safety Compliance Officer, appeared at Huffhines, presented the inspection warrant to its president, and was refused admission. The Secretary then brought this action seeking to have Huffhines held in contempt. Defendant has responded to this court's show cause order by presenting the defenses set forth above. Defendant has also counterclaimed for declaratory and injunctive relief.

## II. Exhaustion of Administrative Remedies.

■ The Secretary has raised a threshold question which must be resolved before turning to the merits of defendant's arguments. He argues that defendant's counterclaim must be dismissed and its defenses disregarded because defendant has an adequate administrative remedy by which the questions which it raises may be resolved. Citing In Re Worksite Inspection of Quality Products, Inc., 592 F.2d 611 (1st Cir. 1979), and Blocksom & Co. v. Marshall, 582 F.2d 1122 (7th Cir. 1978), he argues that defendant must submit to inspection and then challenge the Secretary's entitlement to an inspection warrant in any subsequent enforcement proceeding which OSHA might commence.

The cases cited by the Secretary in support of this contention are procedurally distinguishable. In the Quality Products case, supra, an inspection had already taken place, and the employer sought to retroactively quash the warrant, thereby prohibiting any future use of the evidence obtained through the inspection. The First Circuit rightly held that the proper forum in which to urge suppression of the evidence was the statutory enforcement proceeding, if any, instituted by OSHA, or any appeal from that proceeding in the court of appeals. Likewise, in the Blocksom & Co. case, supra, the employer refused to allow a second inspection after permitting the first, and brought suit to declare both inspections illegal. The Seventh Circuit held that the employer could not "assert its defenses to the Secretary's citations [issued as a result of the first inspection] or its generalized interest in the Act's nonenforcement," 582 F.2d at 1124, in the district court, and that

---

1. Because of its resolution of the first issue, the court does not reach the last two issues.

the proper mode of review was through the Occupational Safety & Health Review Commission and ultimately through the court of appeals. The court expressly noted, however, that the employer could assert its defenses in a proceeding brought by the Secretary seeking an adjudication of civil contempt for failure to honor the second warrant.

The Secretary's suggested administrative alternatives to district court review provide no relief against the inspection itself. This court has already noted in an analogous context that "[i]ndependent of any adverse consequences which might flow from an inspection, the right of [a business] to be free of searches not authorized by law is worthy of judicial protection." *State Fair of Texas v. United States Consumer Product Safety Commission*, No. CA-3-79-1367-G (N.D.Tex. Nov. 3, 1979) (memorandum order denying motion for preliminary injunction). This holding echoes the language of the Seventh Circuit in *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979), where it was stated that

> [T]he injury resulting from an illegal inspection is clearly separate from injury relating to the citations, as the former would exist even if OSHA had found no violations of the Act. A company has a fourth amendment right to conduct its business free of unreasonable administrative inspections. [Citing *Michigan v. Tyler*, 436 U.S. 499, 504–05, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486 (1978); *Barlow's, supra*; and *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).]

592 F.2d at 376. *Accord, Cerro Metal Products v. Marshall*, 467 F.Supp. 869, 882 (E.D. Pa.1979). In the absence of a showing that OSHA provides an adequate forum in which the employer may contest the search before it takes place, there is no administrative remedy to exhaust, and the Secretary's contentions on this point must be rejected.

### III. Authority of the Secretary to Obtain an Ex Parte Warrant.

Defendant's first contention is that the Secretary and his agents have no authority to obtain an administrative inspection warrant *ex parte* and without notice to the party under investigation, as was done in the present case. This argument turns on the proper interpretation to be given the Secretary's inspection regulations as they existed prior to December 22, 1978, and on the effectiveness of an amendment to those regulations promulgated on that date.

### A. The Secretary's Authority Under 29 C.F.R. § 1903.4 Before Its Amendment.

Prior to December 22, 1978, and at the time of the Supreme Court's decision in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Secretary's regulations provided that "[u]pon the refusal to permit a Compliance Safety and Health officer, in the exercise of his official duties, to enter without delay and at reasonable times any place of employment or any place therein, . . . the Regional Solicitor . . . shall promptly take appropriate action, *including compulsory process*, if necessary." 29 C.F.R. § 1903.4 (emphasis supplied). The question of whether the italicized language includes an *ex parte* administrative inspection warrant forms a major area of dispute between the parties, echoing the disagreement among the few cases to have considered the question.

The starting point for any inquiry into the meaning of the Secretary's unamended regulation must be the *Barlow's* case itself. In *Barlow's*, Justice White held for the Court that 29 U.S.C. § 657(a), the provision under which inspection was sought both in *Barlow's* and in the instant case, was unconstitutional insofar as it purported to authorize a nonconsensual warrantless search. In so holding, the Court dealt with the regulation quoted above at some length. In response to the contention that advance notice to employers of impending searches would permit concealment of violations, thereby frustrating the purposes of the Act, the Court noted that there was no indication that the Secretary's practice of requiring compliance officers to seek a warrant after being refused admission had had such

an effect. The Court went on: "Indeed, the kind of process sought in this case *and apparently anticipated by the regulation* provides notice to the business operator." 436 U.S. at 318, 98 S.Ct. at 1823 (emphasis supplied). That the Court appeared to view the regulation as it then stood as requiring notice to the employer prior to issuance of a warrant is further indicated by the sentences which follow:

> If this safeguard endangers the efficient administration of OSHA, *the Secretary should never have adopted it,* particularly when the Act does not require it. Nor is it immediately apparent why the advantages of surprise would be lost if, after being refused entry, *procedures were available* for the Secretary to seek an *ex*

*parte* warrant and to reappear at the premises without further notice to the establishment being inspected.

436 U.S. at 319–20, 98 S.Ct. at 1823–24 (emphasis supplied). The Court indicated in a footnote that a regulation expressly providing for *ex parte* warrants would be within the Secretary's statutory authority. 436 U.S. at 320 n.15, 98 S.Ct. at 1824 n.15.

That the Court thus viewed the regulation as not authorizing *ex parte* warrants seems clear. The Court's view on this point was no doubt influenced by the Solicitor General's representations in his jurisdictional statement and at oral argument to the effect that *ex parte* warrants were not currently being sought.[2] While there is considerable uncertainty as to whether the So-

---

2. In the jurisdictional statement, the Solicitor General noted that "it is commonly the case in civil warrant practice [that] a show cause order issues before compulsory process may be obtained." Statement as to Jurisdiction at 11, *Marshall v. Barlow's, Inc., supra.* At oral argument, the Solicitor General's position was slightly more equivocal. Compare the following excerpts:

"QUESTION: And what does the regulation say about it?

"MR. McCREE: Well, the Secretary has adopted a regulation that provides, in summary, that the Area and Assistant Regional Director and the Regional Solicitor shall promptly take appropriate action, including compulsory process, if necessary.

"Now, as a matter of practice, the Regional Inspectors have then gone to the court to obtain an order requiring the proprietor to submit to the inspection. And, indeed, that was done here. On the 30th of December, the District Court to which the application *was made, after issuing an order to show* cause to which Barlow's responded with counsel, issued an order requiring entry for the purpose of inspection.

"QUESTION: What does the United States—What does the inspector submit to the court to get such an order? Does he just make the presentation such as you did, that there is a reasonable inspection scheme and the statute permits it and we want to get in?

"MR. McCREE: That is essentially the representation he makes to the court. And the court in this case issued an order to show cause which permitted the employer to appear and assert any objection he might have.

"QUESTION: So that is more than the equivalent of a search warrant if you could have gotten a search warrant for this reason?

"MR. McCREE: Considerably more, because it is an adversary proceeding and the

search warrant, of course, is *ex parte.*" (Transcript of argument at 7–8)

\* \* \* \* \* \*

"QUESTION: Mr. Solicitor General, it seems to me that the Secretary here by his regulations has indicated that 'We will just give him notice,' and he has instructed his inspectors, 'If refused entry, don't break in and take advantage of an unannounced entry. Go to court.'

"MR. McCREE: If the Court please, he first instructs his inspector to seek entry, without notice—

"QUESTION: I know, but then he permits him to be turned away and tells him if he is turned away to go to court.

"MR. McCREE: If the Court please, there are regulations which forbid giving advance notice of the intent to inspect, and there are even penalties on the employees for disclosing the intention of inspecting. So it's really not its purpose. The regulation, as the Court appropriately points out, does afford notice once the court is asked to issue such an order. That is the rare case. That is the case where he has been turned down and we hope this Court's ruling today will make it unnecessary to do it." (*Id.* at 41)

\* \* \* \* \* \*

"MR. McCREE: Had an application been made for a search warrant, if the Court please, we suggest that that would have been the representation that would have been made to the magistrate, *ex parte,* and he would have issued—

"QUESTION: A *Camara-See* type.

"MR. McCREE: A *Camara-See* type. And we suggest that he would have issued a search warrant then for the premises." (*Id.* at 9)

licitor General was referring to the requirements of the regulation or merely to the Secretary's practice under the regulation, the fact remains that the Court interpreted these representations as indicating that the regulation did not provide for *ex parte* warrants, and so stated in its opinion. Were the matter one of first impression, the Secretary's argument in this court—that his practice of not seeking *ex parte* warrants did not necessarily reflect his interpretation of the limits of his authority under the regulation—would be a strong one. This issue was, however, resolved in a fashion binding on a district court when the Supreme Court ruled in *Barlow's*. To paraphrase Mr. Justice White in *Barlow's*, if the Secretary's practice did not reflect the limits of his authority, he should never have led the Court so to believe. *Cf. Barlow's, supra,* at 319, 98 S.Ct. at 1824.

Citing *Moulded Acoustical Products, Inc.,* No. 79–1274 (Occupational Safety and Health Review Comm'n, June 12, 1979), the Secretary argues that the language at issue from *Barlow's* must be regarded as dictum and hence not binding on this court. In a sound opinion, the Eastern District of Pennsylvania has rejected exactly this argument. *Cerro Metal Products v. Marshall,* 467 F.Supp. 869, 876 (E.D.Pa.1979) (Pollak, J.). This court does not fully subscribe to Judge Pollak's statement that the Court's dictum was "integral to the constitutional holding." It is true, however, that the Court at least premised its view that advance notice would not frustrate the purpose of the act upon its further view that the Secretary had by its regulations required advance notice.

The decisions of other courts are in accord that, at least prior to the December 1978 amendment, the Secretary had no authority to seek *ex parte* warrants. *Cerro Metal Products, supra; Mosher Steel Co. v. Marshall,* [1979] Occ. Safety & Health Dec. ¶ 23,630 (W.D.Tex. June 6, 1979). *See Bell Fibre Products Corp. v. Babcock,* [1979] Occ. Safety & Health Dec. ¶ 23,815 (Mich. Dist.Ct. Aug. 16, 1979) (following *Cerro Metal Products* under Michigan OSHA); *cf. Marshall v. W & W Steel Co.,* 604 F.2d 1322,

1325 n.2 (10th Cir. 1979) (prior to amendment, employers received *de facto* notice).

### B. *The Secretary's Authority Under 29 C.F.R. § 1903.4 After Its Amendment.*

On December 22, 1978, pursuant to an earlier unpublished opinion in *Cerro Metal Products, supra,* the Secretary enacted certain amendments to 29 C.F.R. § 1903.4. That section, as published in the Federal Register of December 22, 1978, 43 Fed.Reg. 59,838–39 (1978), now specifically states that "[f]or purposes of this section, the term compulsory process shall mean the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent." 43 Fed.Reg. 59,839 (1978) [to be codified in 29 C.F.R. § 1903.-4(d)]. The rulemaking process provided by 5 U.S.C. § 553 was not followed in the adoption of this amendment, inasmuch as the Secretary regarded the amendment as an interpretative rule, general statement of policy, and rule of agency procedure and practice exempted from rulemaking by 5 U.S.C. § 553(b). Unless the amendment falls within one of these three categories, it must be treated as invalid for failure to comply with the Administrative Procedure Act.

■ The defendant in the present action challenges the assertions of the Secretary in the Federal Register and in this court that rulemaking was not required. At the outset, it should be noted that the court is in no way bound by the label which the Secretary attaches to the regulation in deeming rulemaking unnecessary. *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478, 481–82 (2d Cir. 1972); *Hou Ching Chow v. Attorney General,* 362 F.Supp. 1288, 1292 (D.D.C.1973); *Continental Oil Co. v. Burns,* 317 F.Supp. 194 (D.Del.1970). It is the substance of what the agency purports to do and has done which is decisive as to whether rulemaking is required. *Pharmaceutical Manufacturers Ass'n v. Finch,* 307 F.Supp. 858, 863 (D.Del.1970).

It is clear that the amendment was more than a "general statement of policy," since it purported by its own terms to constitute a definition of the term "compulsory process" as used in the regulation defining the Secretary's authority. Hence the defendant's argument turns on whether the amendment qualifies as an "interpretative rule" or "rule of agency procedure and practice."

An interpretative rule is "a clarification or explanation of existing laws or regulations rather than a substantive modification in or adoption of new regulations." *Continental Oil Co. v. Burns, supra*, at 197. Otherwise stated, substantive regulations "create law . . . whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means." *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C. Cir. 1952). In the present case, it is clear that the Secretary's amendment must be characterized as making a change in existing law rather than merely interpreting it.

 As noted by Judge Pollak in *Cerro Metal Products, supra*, and in section III(A) of this memorandum, the Supreme Court construed the Secretary's regulation prior to amendment as not permitting application for *ex parte* warrants. With this interpretive gloss on the regulation, it has passed beyond the power of the Secretary to "interpret" the regulation to the contrary. While the courts are obligated to give persuasive force to an agency's interpretation of its own regulations, or enabling statute, e. g., *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–855, 28 L.Ed.2d 158 (1971); *Roy Bryant Cattle Co. v. United States*, 463 F.2d 418, 420 (5th Cir. 1972), that deference must give way where, as here, the Supreme Court has expressly reached a contrary interpretation, for the agency, like the district court, must yield to the Supreme Court's role as ultimate arbi-

ter of the law. *Cerro Metal Products, supra*, at 877–79.[3]

While the Secretary may not "reinterpret" the regulation in a manner inconsistent with the interpretation given it in *Barlow's*, he is of course free to alter the regulation by abolishing the prohibition on *ex parte* warrants. Indeed, amendment of the regulation in this manner was expressly contemplated in *Barlow's. Marshall v. Barlow's, Inc., supra*, 436 U.S. at 320 n.15, 98 S.Ct. at 1824 n.15. When the Secretary amends the regulation in this fashion, he is exercising a quasi-legislative function delegated to him by Congress rather than usurping a judicial function by overruling the Supreme Court. *Cerro Metal Products, supra*, at 879. But, unless the Secretary's effort fits within the exemption for rules of agency procedure and practice, this lawmaking power carries with it a responsibility to provide the advance notice and opportunity for public comment which is an essential adjunct of the power to promulgate new substantive law, but which was not provided in this case.

In the case of *Pickus v. Board of Parole*, 507 F.2d 1107 (D.C. Cir. 1974), the United States Court of Appeals for the District of Columbia Circuit set forth the guidelines applicable in the determination of whether an agency rule is "procedural" or "substantive:"

> In keeping with the type of action Congress sought to exempt, a matter "relating to practice or procedure" means technical regulation of the form of agency action and proceedings. This category too, should not be deemed to include any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority.

507 F.2d at 1113. *Accord, Lewis-Mota v. Secretary of Labor, supra*, at 482; *Pharma-*

---

**3.** The decision of the Tenth Circuit in *Marshall v. W & W Steel Co.*, 604 F.2d 1322 (10th Cir. 1979), to the effect that the new 29 C.F.R. § 1903.4(d) is an interpretive rule exempt from rulemaking, did not consider the effect of the Supreme Court's interpretation of the regula-

tion in *Barlow's*, and thus reaches a result which this court respectfully declines to follow. *See also In Re Establishment Inspection of Urick Foundry*, 7 Occ. Safety & Health Cas. 1497 (W.D.Pa. July 11, 1979) (declining to follow *Cerro Metal Products*).

*ceutical Manufacturers Ass'n v. Finch, supra,* at 863; *National Motor Freight Traffic Ass'n v. United States,* 268 F.Supp. 90, 96 (D.D.C.1967), *aff'd per curiam,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968); *Seaboard World Airlines, Inc. v. Gronouski,* 230 F.Supp. 44 (D.D.C.1964). *See Cerro Metal Products, supra,* at 880–81.

■ In the present case, it is apparent that the new 29 C.F.R. § 1903.4(d) is on its face no more than a change in agency procedure, from a policy of giving notice and an opportunity to be heard before a warrant is obtained to a policy of not giving such notice and opportunity. However, when the *Pickus* test is applied, it becomes equally apparent that this "procedural" change has a significant external impact. Whether the millions of employers subject to OSHA regulation may contest OSHA's justification for seeking a warrant permitting nonconsensual inspection, and the scope of the intrusion for which judicial sanction is requested, without risking a citation for contempt of court, is a significant regulatory decision that will affect significant numbers of employers, employees, and consumers. Such an impact is at least as substantial as the impact of a regulation cutting back an airline's share of the air mail transportation business, *Seaboard World Airlines v. Gronouski, supra,* or a regulation establishing procedures for refunding illegal transportation charges, *National Motor Freight Traffic Ass'n v. United States, supra,* both of which have been held subject to rulemaking. In the words of the Third Circuit, rulemaking would "enable [OSHA] to educate itself before establishing rules and procedures which have a substantial impact on those regulated." *Texaco, Inc. v. F.P.C.,* 412 F.2d 740, 744 (3rd Cir. 1969).[4]

### *IV. Summary.*

This court concurs with Judge Pollak in *Cerro Metal Products, supra,* that the Secretary has "become entangled in the web of

his own Regulations." *See Urick Foundry, supra,* at 1498. Behind this phrase, there lies a concern for the integrity of the administrative process. A 180-degree shift in the procedure by which over five million employers are kept in compliance with the Act ought not to be undertaken without the opportunity for mature deliberation contemplated by the rulemaking provisions of the Administrative Procedure Act. "[T]here are good policy arguments to be made both for and against an *ex parte* warrant procedure in the OSHA context." *Cerro Metal Products, supra,* at 882. The Secretary has been invited by the United States Supreme Court and the Fifth Circuit Court of Appeals to reexamine his inspection enforcement procedures, *Barlow's, supra,* 436 U.S. at 320 n.15, 98 S.Ct. at 1824 n.15; *see Marshall v. Shellcast Corp.,* 592 F.2d 1369, 1372 (5th Cir. 1979), and all that remains is for the Secretary to do so in a manner consistent with the Administrative Procedure Act, which will ensure that the decision reached as a result of that reexamination is not hasty or ill-advised.

Judgment will be entered for defendant pursuant to this opinion.

---

4. It is interesting to note that a sister agency, the United States Consumer Product Safety Commission, promulgated a regulation expressly authorizing *ex parte* warrants only after full-scale rulemaking. *See* 44 Fed.Reg. 34,923–32 (1979). Much of the resulting public commentary specifically concerned the justification for and scope of nonconsensual inspections. *Id.* at 34,924–26.