# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 26, 2007

Charles R. Fulbruge III
Clerk

———

No. 06-60993

———

TRINITY MARINE PRODUCTS, INC.,

                                        Petitioner,

v.

ELAINE CHAO,
Secretary, Department of Labor,

                                        Respondent.

———

Petition for Review of an Order of
the Occupational Safety and Health Review Commission

———

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Over the objection of Trinity Marine Products, Inc. ("Trinity"), but pursuant to an administrative search warrant, compliance officers from the Occupational Safety and Health Administration ("OSHA") inspected a workplace owned by Trinity and issued citations.  Trinity claims that the search violated the Fifth Amendment because OSHA threatened to arrest Trinity personnel who inter-

fered with the search, but the constitutionally required method to execute administrative warrants when the targeted party refuses to acquiesce is to commence a civil contempt proceeding, which OSHA did not do.

An administrative law judge ("ALJ") heard and rejected Trinity's argument. Trinity petitions for review. Because Trinity's contention finds no support in the Constitution or precedent, we deny the petition.

I.

On October 21, 2004, as part of a general inspection program, compliance officers from OSHA visited Trinity's facility to conduct an inspection. Trinity denied the inspectors entry with the explanation that its designated representative to OSHA was not present.

On November 30, OSHA obtained an administrative search warrant from a United States magistrate judge. On December 8, the compliance officers, warrant in hand, returned to Trinity's facility. Trinity officials asked for copies of the warrant's supporting documentation, which the compliance officers declined to provide. Trinity then refused to permit the compliance officers to inspect the facility.

The officers called an Assistant United States Attorney ("AUSA"), and Trinity officials in turn phoned legal counsel. The AUSA advised Trinity's counsel that unless the compliance officers were allowed to inspect, federal marshals would be dispatched. Trinity's counsel rejoined that the proper procedure to enforce an administrative warrant is to commence a contempt proceeding and not forcefully to execute the warrant.

At an impasse, the compliance officers contacted their supervisors, who told them to leave the facility. Shortly thereafter a federal marshal contacted the compliance officers. With the help of three marshals, the officers returned to the workplace and informed Trinity officials that unless the inspection went

forward, the company's officers would be arrested. The company assented.

When the marshals left, however, Charles Latiolais, Trinity's designated representative to OSHA, arrived and again forbade the inspection without first reviewing the warrant's supporting documentation. The compliance officers telephoned the marshals, who threatened Latiolais that unless the inspection was permitted, "somebody will be in chains." The Trinity officials permitted the inspection, stating that it was being allowed "under protest."

Trinity filed an emergency motion in federal court to enjoin the inspection, contending that the warrant lacked probable cause and that forceful execution of an administrative warrant is unlawful. The compliance officers, however, completed the inspection before the court held a hearing on Trinity's motion. At the hearing on December 9, OSHA successfully argued that because the warrant had been executed, Trinity was required to exhaust its administrative remedies.

OSHA later issued citationsSSthe nature of which are not at issue hereSS based on evidence obtained from the search. Before an ALJ, Trinity contested the citations and raised its constitutional challenge and other arguments that the search was unlawful, contending that the search's illegality should result in the suppression of evidence. The ALJ rejected those arguments, and the Occupation Safety and Health Review Commission ("OSHRC") declined to review the ALJ's decision, thus making it a final order of OSHRC pursuant to 29 U.S.C. § 659(c). Trinity petitions this court, pursuant to 29 U.S.C. § 660, to review the search's legality.

## II.

Trinity does not seek review of any of the ALJ's factual findings. Thus, the review of whether OSHA acted in accordance with Trinity's constitutional rights is de novo. United States v. Villanueva, 408 F.3d 193, 200 (5th Cir. 2005).

III.

Before addressing Trinity's constitutional claim, we must decide whether the law of the case doctrine somehow limits the arguments available to Trinity. The Department of Labor contends that because Trinity did not appeal the district court's December 9 rulings, the doctrine applies, suggesting that this court is bound by the determination of the district court. That argument misstates the law (and the district court's ruling) and is irrelevant.

"The law of the case doctrine provides that 'an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal.'" Fuhrman v. Dretke, 442 F.3d 893, 896 (5th Cir. 2006) (internal citations omitted). The district court, in denying Trinity's emergency motion, ruled that since the search had already taken place, Trinity was required under Baldwin Metals Co. v. Donovan, 642 F.2d 768 (5th Cir. Unit A Apr. 1981), to exhaust administrative remedies. The court then ruled that it was inappropriate for it to exercise equitable jurisdiction. Instead of appealing that ruling, Trinity presented its claims to the ALJ.

The law of the case doctrine does not apply. No previous appellate decision has established any law for this case. Moreover, the district court did not rule, as the Department of Labor claims, that "there was no evidence [that] Trinity's constitutional rights had been disregarded." The court merely said, for purposes of determining whether equitable jurisdiction was appropriate, that Trinity's constitutional rights had not been unambiguously disregarded.

Finally, the Department's argument is altogether off-track because, even if the law of the case doctrine did apply, the Department misses the point of Trinity's argument. Trinity does not dispute that the exhaustion requirement is the law once an inspection has taken place; Trinity instead urges that before an inspection pursuant to an administrative warrant takes place, an employer has a constitutional right to challenge the warrant's validity in a contempt hear-

ing, and that it is that right that has been violated. The law of the case doctrine, therefore, is beside the point.

## IV.

The heart of Trinity's case is its claim that there is a constitutional rightSS an amalgam of the Fourth and Fifth Amendments[1]SSto contest an administrative warrant's validity in federal court before its execution. Otherwise, Trinity argues, an unconstitutional search could escape federal court review if OSHA merely declines to issue citations, leaving no administrative forum to hear the claim. To give force to this pre-execution right, Trinity contends that an administrative warrant cannot be forcefully executed, but that, instead, OSHA must commence civil contempt proceedings against recalcitrant targets.

Though there is some dicta from this court and others that supports Trinity's claim, and other dicta that cuts against it, this specific question is one of first impression. We agree with the ALJ that there is no constitutional right to a pre-execution contempt hearing and that administrative warrants, like criminal warrants, can be executed by means of reasonable force.

Trinity's so-called right finds no support in the Constitution's text or history and has never been blessed by the Supreme Court. In fact, the best reading of the leading Supreme Court case on point, Marshall v. Barlow's, Inc., 436 U.S. 307 (1978), is decidedly against Trinity's claim. This is not surprising, because Trinity's argument makes no sense: Just as in the criminal context where a search by federal officers violates a suspect's constitutional rights but no charges are filed, a victim of an unconstitutional administrative search can affirmatively

---

[1] The administrative warrant requirement is derived from the Fourth Amendment. Trinity claims that the right to a contempt hearing to challenge the administrative warrant before its execution comes from the Fifth Amendment.

bring the grievance before a federal tribunal by means of a Bivens suit.[2]  There is no danger of an unremedied constitutional wrong.

### A.

Before the Supreme Court decided See v. City of Seattle, 387 U.S. 541 (1967), and its companion case, Camara v. Municipal Court, 387 U.S. 523 (1967), non-criminal regulatory inspections could be conducted without a warrant.  In Barlow's, 436 U.S. at 312, the Court extended See and Camara to OSHA, holding that, despite the language of the Occupational Safety and Health Act, 29 U.S.C. § 657(a) (the "OSH Act"),[3] the Fourth Amendment requires administrative warrants for non-consensual OSHA inspections.

In Barlow's, 436 U.S. at 312, the Court, over a spirited dissent, reasoned that "[t]he businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property" and that without a warrant requirement, he is at risk of "arbitrary invasions" by "government officials."  In light of Barlow's, it is not uncommon for an employer to exercise this constitutional right to require OSHA to present a warrant.[4]

These administrative warrants are distinguishable from traditional criminal warrants in a number of ways.  They have, for instance, a differentSSlin-

---

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[3] See 1 ROSCOE B. HOGAN & ROBERT D. MORAN, OCCUPATIONAL SAFETY AND HEALTH ACT § 4.02[1][a] (2007) ("The plain language of the OSH Act states that inspectors, upon presenting their credentials, are authorized to enter a business without delay to inspect for OSHA violations.").

[4] In fact, "many companies have adopted a policy prohibiting warrantless searches of their premises."  Id.  "If permission to inspect is not obtained, OSHA will then have to decide whether to seek a warrant or to give up on the attempt to inspect."  Id. § 5.01[4].

guistically idiosyncratic[5]SS"probable" cause standard:  Probable cause may be based either on specific evidence of an existing violation, as in the traditional criminal context, or on a lesser showing that "reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment."  Id. at 320.

Administrative warrants also differ from traditional criminal warrants in that the exhaustion-of-administrative-remedies doctrine applies, meaning that an employer who wishes to challenge a warrant cannot immediately file a motion in district court to suppress the evidence after the warrant has been executed. In Baldwin Metals, 642 F.2d at 771-75, we held that the employer is required to raise any challenges to the search before OSHRC, with review ultimately by the court of appeals.

At least in general practice, administrative warrants are different from criminal warrants also in how they are executed:  If an employer refuses to allow OSHA inspectors to enter even with a warrant, the usual remedy is for OSHA to bring an action for contempt against the employer.[6]  This differs from a

_____

[5] Barlow's, 436 U.S. at 326-27 (Stevens, J., dissenting) ("The warrant requirement is linked 'textually . . . to the probable-cause concept' in the Warrant Clause.  The routine OSHA inspections are, by definition, not based on cause to believe there is a violation on the premises to be inspected. . . .  Because of the acknowledged importance and reasonableness of routine inspections in the enforcement of federal regulatory statutes such as OSHA, the Court recognizes that requiring full compliance with the Warrant Clause would invalidate all such inspection programs.  Yet, rather than simply analyzing such programs under the 'Reasonableness' Clause of the Fourth Amendment, the Court holds the OSHA program invalid under the Warrant Clause and then avoids a blanket prohibition on all routine, regulatory inspections by relying on the notion that the 'probable cause' requirement in the Warrant Clause may be relaxed whenever the Court believes that the governmental need to conduct a category of 'searches' outweighs the intrusion on interests protected by the Fourth Amendment.") (quoting South Dakota v. Opperman, 428 U.S. 364, 370 n.5 (1976)).

[6] Trinity argues that it could find only one caseSSinvolving a state administrative agencySSin which an administrative warrant was executed by forceful entry and not civil contempt. Though it is true that there are many reported cases in which contempt was sought, Trinity overstates its case.  In Baldin Metals it appears that OSHA forcefully executed an administrative warrant.  See Baldwin Metals, 642 F.2d at 771 nn.5, 6.  Whether the searches in Bald-
(continued...)

criminal warrant; with "an honest-to-goodness criminal search warrant," the government will get "hold of a sledgehammer . . . and [break] down [the] door." In re Establishment Inspection of Skil Corp., 846 F.2d 1127, 1132 (7th Cir. 1988). "Although moviegoers who remember the environmental police in the movie Ghostbusters will be surprised, the practice of allowing the target of an administrative warrant to forbid entry and thereby convert the warrant proceeding into a contempt proceeding is the standard method of enforcing such warrants." Id. Indeed, "[e]ven the compliance officers of the Drug Enforcement Agency [sic] are unarmed when executing administrative search warrants . . . ." Id.

B.

The issue presented in this case, however, is whether the Constitution forbids the forceful execution of an administrative warrant; as stated by the ALJ, "[a]lthough a civil contempt proceeding or a hearing on a motion to quash the warrant are [sic] possible options, nothing precludes the use of U.S. Marshals to enforce a warrant." To support its claim that contempt is constitutionally mandated, Trinity cites a number of cases from this and other circuits and a pair of policy arguments.

The sole case relied on by the ALJ, however, was Marshall v. Shellcast Corp., 592 F.2d 1369 (5th Cir. 1979),[7] in which OSHA obtained a warrant to search two foundries belonging to a single employer. The employer stated that it "would continue to refuse OSHA access to [its] foundries." Id. at 1370. OSHA "then filed complaints in federal district court asking the court to order [the em-

---

[6] (...continued)
win Metals were permissible, however, was not before the court.

[7] On appeal, the Department of Labor briefly cites Shellcast but principally makes a broader argument that Mathews v. Eldridge, 424 U.S. 319 (1976), allows a post-execution review of a warrant and that Trinity cannot establish the stringent standards, announced therein, for pre-deprivation review.

ployer] to permit the inspections." Id. We held that the district court lacked jurisdiction to hear OSHA's complaints, because OSHA was not statutorily authorized to seek injunctions to enforce warrants.

Explaining why the statutory framework did not permit OSHA to seek injunctions, we noted that "Congress, desiring an enforcement scheme based on surprise and undelayed searches, would very much prefer immediate execution of duly-issued Ex parte warrants" and that seeking an injunction when OHSA already has a warrant "is redundant. The warrant already issued . . . fully authorizes the Secretary to 'enter without delay' and 'inspect and investigate' the premises of even unconsenting employers." Id. at 1372.[8]

We added this footnote:

> We see a search warrant as a full and complete judicial authorization for a search potentially subject to a presearch attack on constitutional grounds, of course . . . but otherwise binding on the employer who does not consent to the search. If necessary, physical force is available for the execution of the warrant. See[, 387 U.S. at 545-46] ("administrative entry, without consent, upon the portions of commercial premises which are not open to the public may . . . be compelled through . . . physical force within the framework of a warrant procedure"). And of course the employer who attempts to resist execution of the warrant risks being held in contempt.

Id. at 1372 n.7 (emphasis added).[9]

---

[8] At first blush, this holding in Shellcast appears to be in tension with the process that Trinity claims is constitutionally required: If OSHA cannot seek to have the court hold an employer in contempt, how would a contempt hearing come about? The distinctionSSthough not spelled out in ShellcastSSis the difference between an injunction and contempt. An injunction is "[a] court order commanding or preventing an action." BLACK'S LAW DICTIONARY 800 (8th ed. 2004) ("injunction"). With contempt, however, "[t]he usual sanction is to confine the contemnor until he or she complies with the court order," because "[a] civil-contempt proceeding is coercive or remedial in nature." Id. at 336 ("contempt").

[9] The ALJ did not rely directly on See to support its contention. That is sound, because the issue in See and its companion case, Camara, was whether municipal regulatory inspection schemes that provide for entry without a warrant are constitutional. Any statement, therefore, beyond that threshold questionSSsuch as how an administrative warrant can be exe-
(continued...)

Citing that footnote, the ALJ ruled that we have already countenanced the use of physical force in executing administrative warrants. Trinity, on the other hand, argues that the footnote is merely dictum, because the issue of "physical force" was not before this court, and that Judge Goldberg, the author of Shell-cast, did not accord the footnote precedential value in subsequent cases.

Trinity, for instance, points to language in a number of cases, some written by Judge Goldberg, that it argues demonstrates that administrative warrants cannot be executed by force. First cited is Brock v. Gretna Machine & Ironworks, 769 F.2d 1110 (5th Cir. 1985). There, OSHA obtained an administrative warrant, but the employer "refused access." Id. at 1111. Civil contempt was sought, and "Gretna answered the complaint and counterclaimed, seeking a declaratory judgment that the inspection warrant was violative of its fourth amendment guarantees." Id. We vacated the district court's decision, holding that OSHA's warrant application was "fatally defective." Id. at 1113. Before addressing the flaws in the warrant application, however, we commented on the employer's refusal to allow OSHA access to inspect, stating that "Gretna had the option of seeking to quash the warrant before execution or, as it did, refuse entry and challenge the warrant in resulting civil contempt proceedings." Id. at 1111 n.3.

The ALJ rightly noted that "[t]he threat of physical force was never at issue" in Gretna, so the statement was dictum. Moreover, the footnote does not even necessarily support Trinity's position. Although it can be read to mean that it is impermissible to execute an administrative warrant by force, it can also be interpreted more narrowly to mean that an employer has "the option" to chal-

---

[9] (...continued)
cutedSSwas dictum. In fact, the See Court expressly limited its holding, noting that "constitutional challenge to such programs can only be resolved . . . on a case-by-case basis under the general Fourth Amendment standard of reasonableness. We hold only that the basic component of a reasonable search . . .SS[that] it not be enforced without a suitable warrant procedureSSis applicable in this context . . . ." See, 387 U.S. at 545-46.

lenge a warrant in contempt proceedings only where OSHA has elected not to execute the warrant forcefully.[10]

Trinity next cites Department of Labor v. Kast Metals Corp., 744 F.2d 1145, 1147 (5th Cir. 1984), in which OSHA obtained an administrative warrant, but the employer "allowed access only to the company's records and denied entry to conduct a physical examination of the workplace." The employer successfully moved in the district court to quash the warrant, "contending that OSHA had promulgated [the inspection program] without satisfying the notice and comment rulemaking procedures by the [Administrative Procedures Act]." Id. at 1148. The Department of Labor "counterclaimed for an adjudication holding Kast in contempt for having failed to comply with the warrant." Id. We reversed.

Trinity argues that in Kast Metals we intimated in a footnote that an employer has the option to deny entry to inspectors, even if they come with a warrant, provided the employer is willing to risk being held in contempt. After stating that "[a]ny fourth amendment interest, then, should be vindicated initially by the magistrate's watchful eye and, failing this, by the federal courts," id. at 1155, we noted that "[u]pon issuance of the warrant, an employer may . . . move before the district court to quash the warrant prior to its execution, or it may assert its claims in the course of a civil contempt proceeding brought by the Secretary upon the employer's denial of entry." Id. at 1155 n.21. "Alternatively, the employer may bring its objections to the Commission upon citation, and ultimately to the circuit courts of appeal." Id. Like Gretna, however, Kast Metals

---

[10] Just as OSHA does not always obtain a warrant where an employer refuses to consent to a warrantless search, see 1 HOGAN & MORAN, supra, § 4.02[1], it makes sense that the agency would not always forcefully execute a warrant where an employer blocks access to inspectors. There is an institutional cost to OSHA in forceful execution. For instance, aside from the effort necessary to use force (which, as this case demonstrates, requires some logistical perseverance), it is to OSHA's advantage to know, before a search, whether a warrant is valid. Otherwise, it would expend a great deal of institutional resources to no end.

did not directly concern the issue that Trinity's petition raises.

Trinity also relies on Donovan v. Huffhines Steel Co., 645 F.2d 288 (5th Cir. Unit A May 1981), which, in a one-line opinion "based on" the district court's opinion, affirmed Marshall v. Huffhines Steel Co., 488 F. Supp. 995 (N.D. Tex. 1979). In Huffhines the employer denied OSHA inspectors access to its facility, notwithstanding the presence of a warrant. OSHA moved to have the employer held in contempt, and the employer challenged the warrant on a number of theories. The district court noted that an "employer['s ability to] assert its defenses in a proceeding brought by the Secretary seeking an adjudication of civil contempt" is necessary because the "suggested administrative alternatives to district court review provide no relief against the inspection itself." Id. at 997.

In deciding whether notice-and-comment rulemaking was necessary for OSHA to have the power to obtain ex parte warrants, the Huffhines district court also stated, "Whether the millions of employers subject to OSHA . . . may contest OSHA's justification for seeking a warrant permitting nonconsensual inspection, and the scope of the intrusion for which judicial sanction is requested, without risking a citation for contempt of court," is a decision of such magnitude that it "will affect significant numbers of" people. Id. at 1001. Trinity argues that this too suggests that civil contempt is constitutionally required.

Again, however, the question whether OSHA is forbidden to execute a warrant forcefully was not at issue in Huffhines. The question was much narrower: whether, at a contempt hearing already initiated by OSHA, a targeted employer may present arguments against the validity of the warrant. Id. at 996-97. Though Huffhines addressed an important matter, it did not concern the question whether OSHA, as a matter of constitutional law, must commence a contempt proceeding in the first place.[11]

---

[11] Outside the Fifth Circuit, the most explicit case on point is Babcock & Wilcox Co. v.
(continued...)

Undergirding Trinity's claims are a pair of flawed constitutional policy

---

[11] (...continued)
Marshall, 610 F.2d 1128 (3d Cir. 1979), cited approvingly in Baldin Metals, 642 F.2d at 774 n.13. In Babcock & Wilcox, the court confronted an employer's challenge to an already executed administrative warrant and held that the employer had to exhaust administrative remedies, as we held in Baldin Metals. The employer argued that if it had to go through administrative hearings, it is possible that illegal searches would "inevitably evade review." Babcock & Wilcox, 610 F.2d at 1136. The court rejected that argument:

> Contrary to Babcocks's contention, illegal OSHA searches will not inevitably evade review; they may be preserved for determination by the district courts if the plant operator is willing to risk civil contempt and moves expeditiously to obtain full judicial review before the warrant is executed. This may seem to be a cruel choice to thrust on the company, but the alternative would be to indulge both in a presumption that magistrates do not perform their duties correctly and that there will not be probable cause for issuing inspection warrants in a fair number of these cases.

Id. The court also noted that "[d]irect review of the issuance of a civil warrant may be obtainable before the inspection by resisting entry, moving to quash the warrant, risking contempt, and if necessary acting expeditiously to appeal." Id. at 1135-36

Babcock & Wilcox, however, did not involve the forceful execution of a warrant, and, in In re Metal Bank of America, Inc., 700 F.2d 910, 915 (3d Cir. 1983), the court held that even if an employer "quickly move[s]" to challenge an inspection to "preserve the status quo," the exhaustion requirement applies if the inspection occurs before the employer's legal challenge to it can take place. Though the court cited Babcock & Wilcox for the proposition that "[d]irect review by the federal courts of the validity of an OSHA warrant may . . . be obtained so long as the employer prevents the inspection from occurring either by obtaining a stay or by refusing entry and being adjudicated in civil contempt," id. at 915 n.5, the fact that the court did not even discuss a constitutional violation where the employer's attempt to obtain pre-enforcement review had failed suggests that Babcock & Wilcox does not give employers a constitutional right to a contempt hearing.

In In re Establishment Inspection of Skil Corp., 846 F.2d 1127, 1132 (7th Cir. 1988), the court posited that there is a difference between "an honest-to-goodness criminal search warrant" and an administrative warrant. "The practice of allowing the target of an administrative warrant to forbid entry and thereby convert the warrant proceeding into a contempt proceeding is the standard method of enforcing such warrants." Id. The court did not hold, however, that such a "standard method" is constitutionally required. In fact, in In re Establishment Inspection of Kohler Co., 935 F.2d 810, 814 (7th Cir. 1991), the court stated that OSHA had a "policy of permitting employers to challenge the warrant [that] provided the district court an opportunity to review the warrant before OSHA conducted its inspection" by allowing the employer to move to quash the warrant. This suggests that seeking contempt first is not constitutionally mandated, though the court did say that its decision concerning the exhaustion of administrative remedies might be different if OSHA's "policy" were rescinded. Id.

arguments. First, Trinity argues that, because after an administrative inspection takes place any challenge to the warrant is subject to the exhaustion of administrative remedies doctrine, it follows that if pre-enforcement civil contempt proceedings are not available to an employer, OSHA can unconstitutionally inspect a facility and, if it declines to issue citations, the unconstitutional inspection will go unremedied, because there will be no administrative forum to hear the matter. But, according to Trinity, if pre-enforcement contempt proceedings are an option, the employer can protect itself against the constitutional violation by risking contempt to challenge the warrant's validity before it is executed, thus avoiding the constitutional violation before it occurs. Second, Trinity contends that because the probable cause standard in administrative warrants is lower than for criminal warrants, employers should be able to challenge an administrative warrant before it is executed.

Trinity's first purported policy justification, raised at times in a number of cases,[12] is not convincing. There is another route to remedy whatever constitutional violations may occur in an OSHA search: a Bivens action. Though from an employer's perspective, Bivens may not be a perfect remedy,[13] it is at least as attractive as requiring an employer to risk contempt to get pre-enforcement review of an administrative warrant.[14] But at the same time, Bivens has an advantage that Trinity's proposal does not: We need not recognize a constitutional

---

[12] For instance, in Babcock & Wilcox, 610 F.2d at 1136, the court's statement about the contempt option was in response to the employer's argument that the application of the doctrine of exhaustion of administrative remedies would cause "illegal OSHA searches [to] inevitably evade review."

[13] See, e.g. Harlow v. Fitzgerald, 457 U.S. 800 (1982) (recognizing defenses such as qualified immunity).

[14] The Kohler court, 935 F.2d at 812, also recognized this possibility: "[A] determination that the OSHA inspectors lacked probable cause also could conceivably support a section 1983 action [sic], giving Kohler another possible remedy for the unconstitutional search and rescuing the case from mootness." See also Babcock & Wilcox, 610 F.2d at 1137 n.22.

right to defy a duly-issued warrant.

Trinity also briefly offers a second policy justification for its argument: "One reason a criminal warrant may be enforced by force is because of the more stringent showing of probable cause required . . . ." But though it is hornbook law that in the wake of Barlow's there is a lower standard of probable cause for administrative warrants, it does not follow that the due process requirements for executing administrative warrants are ratcheted up as an offset.

Because the natures of the possible punishment in administrative and criminal contexts differ, with criminal punishment greatly exceeding administrative citation, and because traditionally regulatory inspections required no warrant at all, it is unremarkable that the standard for obtaining an administrative warrant is considerably less stringent than that for criminal warrants. In fact, given the heightened constitutional concern for individuals enmeshed in criminal investigations, one would expect that it would be a criminal warrantSSor none at allSSthat the government constitutionally cannot execute by force.

Barlow's also supports the view that there is no constitutional right to pre-enforcement review of administrative warrants. There the Court for the first time required OSHA inspectors to have a warrant. This was a dramatic change in the law. The Court recognized as much and so explicitly cut back the reach of its opinion by holding that the probable cause standard ordinarily associated with warrants does not apply to administrative warrants.[15] Barlow's, 436 U.S. at 320-21.

At the same time, the Court never hinted that the method of executing ad-

---

[15] The dissenters in Barlow's argued that the lower probable cause standard for administrative warrants means that administrative searches should not require warrants at all, see Barlow's, 436 U.S. at 325-30 (Stevens, J., dissenting), not, as Trinity contends from the same feature, that those searched pursuant to an administrative warrant should have a constitutional right to pre-enforcement review of the warrant that is not available to those searched pursuant to a criminal warrant.

ministrative warrants would be different from that for criminal warrants. By fashioning a lower probable cause standard for administrative warrants without alluding to any constitutional change in how the warrants were to be administered, the Court made its intent plain: An administrative warrant is a less protective form of warrant.

V.

Citing Accardi v. Shaughnessy, 347 U.S. 260 (1954), Trinity urges that the search violated its due process rights because it contravened OSHA's Field Inspection Reference Manual ("Manual"). The ALJ, ruled, however, that "[i]t is somehow lost on Trinity that [the] compliance officers followed the guidelines." The Department of Labor agrees that the inspection guidelines were followed but contends that the issue is irrelevant because the Manual is merely advisory. We need not address the Department's argument, because we agree with the ALJ that the search complied with the Manual.

The Manual instructs how OSHA officers are to conduct inspections, stating that "if the employer refuses to comply or if consent is not clearly given, [the officers] shall not attempt to conduct the inspection but shall leave the premises and contact the Assistant Area Director concerning the matter . . . ." U.S. Department of Labor, OSHA Field Inspection Manual, CPL 02-00-103, ¶ 7962.150 (Sept. 26, 1994). The ALJ observed that this requirement was met in every respect. After being rebuffed by Trinity officials, the OSHA compliance officers contacted their supervisors, who instructed them to leave and wait for additional instructions. Then, the officers were told to return with the marshals (which is also expressly authorized under the Manual, id.). Thus, the ALJ ruled that "OSHA did not violate its own inspection procedures. The compliance officers proceeded with the inspection in the manner prescribed by the [Manual]."

Despite the straightforwardness of the Manual's language, Trinity avers

that a violation occurred, based on the Manual's "sequence" and OSHA's "past practice." In its reply brief, Trinity outlines the Manual's structure and argues that it forbids the forceful execution of warrants, especially given that it is silent regarding the availability of force.

Unfortunately for Trinity, even when one reads the entire relevant section of the ManualSSand not just the specific language focused on by the ALJSSthe best reading is that OSHA complied with the Manual. Nowhere does the Manual's text or structure forbid the forceful execution of a warrant. In fact, the Manual expressly permits a federal marshal to "accompany" the inspectors, which suggests that force can be employed. Id.[16] In any case, the Manual merely instructs inspectors to wait for further instructions, which they did.

Trinity also argues that because the inspectors' conduct violated OSHA's consistent practice, the agency cannot now begin to execute warrants forcefully. As support, Trinity refers to Huffhines, but the citation's relevance is not apparent, given that Huffhines concerned the Supreme Court's construction of a federal regulation that put an "interpretative gloss" on it such that it "passed beyond the power of the Secretary to 'interpret' the regulation to the contrary." Huffines, 488 F. Supp. at 1000.

This is insufficient briefing from which to determine whether a consistent agency practice over time somehow can give the Manual the meaning Trinity contends that it has, despite its text. Under L&A Contracting Co. v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994), this particular argument is waived.

VI.

---

[16] Trinity cites to an earlier edition of the Manual that prohibited the use of force, but Trinity concedes this language came from a long-superseded edition, and the edition that Trinity claims OSHA violated does not contain that or similar language.

Trinity offers a couple of arguments that piggyback on its Fifth Amendment claim. It contends that its Fourth Amendment rights were violated because "if a warrant may not be executed by force then it follows that any force is excessive." Trinity also argues that the search violated the statutory requirement that OSHA searches be conducted "at reasonable times, and within reasonable limits and in a reasonable manner," 29 U.S.C. § 657(a)(2), because any inspection that violates the Constitution "necessarily violates this reasonableness requirement." Because, however, there has been no Fifth Amendment violation, the Fourth Amendment and § 657(a)(2) have not been violated.

For the foregoing reasons, the petition for review is DENIED.