**AMOCO OIL COMPANY, Plaintiff,**

v.

**Ray MARSHALL, Secretary of Labor, and the Occupational Safety and Health Administration, Defendants.**

**Civ. A. No. G–80–45.**

United States District Court,
S. D. Texas,
Galveston Division.

Sept. 9, 1980.

John B. Abercrombie, Baker & Botts, Houston, Tex., for Amoco Oil Co.

---

**5.** 42 U.S.C.A. § 1988.

Max A. Wernick, Dallas, Tex., for Ray Marshall, Secretary of Labor.

Jack F. Ostrander, Dallas, Tex., for Occupational Safety and Health Administration.

## MEMORANDUM ORDER

HUGH GIBSON, District Judge.

### I. *BACKGROUND FACTS*

This action originated in the Southern District of Texas as a suit to enjoin the Secretary of Labor and the Occupational Safety and Health Administration from obtaining a search warrant. In the course of events that followed, to be described with particularity herein, the cause is now before this Court for a determination of contempt and motion to quash an administrative search warrant.

This cause of action presents the Court with the novel question of interpreting those rules set forth in 29 U.S.C. § 657, *et seq.*, and 29 C.F.R. § 1903, *et seq.*, dealing with policies for enforcement of administrative inspections pursuant to the Williams Steiger Occupational Safety and Health Act of 1970 (29 U.S.C. § 651, *et seq.*) (hereinafter referred to as OSHA).

The Court has for its contemporaneous consideration: Petitioner Department of Labor's (hereinafter DOL) Request for Summary Contempt for failure to comply with an administrative search warrant; and Respondent Amoco Oil Company's Motion to Quash the Inspection Warrant.

Respondent, Amoco Texas Refining Company (hereinafter Amoco), is a corporation engaged in the refining of petroleum products at Texas City, Texas, within the jurisdiction of this Court. On January 8, 1980, Amoco's contract employees, members of the Oil, Chemical and Atomic Workers International Union (OCAW), went on strike. On February 13, 1980, an explosion and subsequent fire occurred at the Amoco refinery resulting in the deaths of two employees of Tri–Port Constructors, Inc., a contractor engaged by Amoco.

On February 14, 1980, Emile Petite, a compliance officer of the Occupational Safety and Health Administration went to the Amoco refinery for the purpose of commencing an inspection of the circumstances surrounding the incident explosion and fire. Mr. Petite requested Amoco officials to permit an authorized representative of the employee union (OCAW) to accompany him throughout the course of the inspection. Entry of the OCAW employee–representative was denied by Amoco officials who stated that since the Union was on strike, and their employee members not present at the plant or exposed to dangers, if any there be, the company would not permit a representative of the striking employees to enter the plant. Mr. Petite proceeded to make his initial inspection without an employee–representative.

On February 15, 1980, pursuant to instructions from his supervisors, Mr. Petite returned to the Amoco refinery with Cliff Babnew, an authorized representative of the OCAW employees, and renewed his request that an employee–representative be permitted to accompany him during the inspection. Amoco again chose to deny the request.

The Occupational Safety and Health Administration considered Amoco's refusal to allow the authorized employee–representative to accompany the compliance officer on the inspection as a refusal of entry as outlined in 29 C.F.R. § 1903.4, and apprised Amoco of its intentions to secure a warrant, including an order compelling Amoco to permit entry of the OCAW representative to participate in the remainder of the inspection.

On February 22, 1980, Amoco sought, and was granted, a Temporary Restraining Order in this Court, restraining the Occupational Safety and Health Administration from obtaining, or seeking to obtain, a search warrant compelling entry of a striking union representative upon Amoco's premises. On March 16, 1980, this Court denied Amoco's request for a preliminary injunction, finding that Amoco had failed to establish the necessary element of irreparable harm. During the hearing on the preliminary injunction, counsel for Amoco ad-

vised the Court that if a warrant issued, compelling entry of a striking union employee–representative, the company would have no choice but to refuse entry under the warrant and subject itself to proceedings in civil contempt.

Counsel for Amoco correctly set forth the scenario that was to come to pass. On the same date that the judgment was signed denying Amoco's request for preliminary injunctive relief, the Secretary submitted a "Request for Inspection Warrant" to a United States Magistrate for consideration. The application for the inspection warrant set forth the particulars of the situation, including the Secretary's request that the warrant command entry for not only a compliance officer, but also for a named OCAW employee–representative, M. L. Hamby. Petitioner's application specified that OCAW employees were on strike and that their strike status was the basis for Amoco's refusal to permit entry of the OCAW employee–representative. The application represented to the Magistrate that the strike status of the union in no way impaired the effect of statutory and regulatory pronouncements that call for the compliance officer to be accompanied by an employee–representative during the physical inspection of the plant. Upon consideration of affidavits from both the compliance officer and the proposed accompanying employee–representative, the Magistrate issued an inspection warrant on March 6, 1980, ordering entry onto Amoco plant premises for both the compliance officer and Mr. Hamby, the designated OCAW employee–representative.

On March 7, 1980, OSHA compliance officer Petite, accompanied by Mr. Hamby, attempted to execute the warrant by serving it on Amoco's Safety Supervisor, Tracy East. Mr. East returned the warrant to Petite along with a document[1] refusing entry to any third party, for the purpose of accompanying the compliance officer, except Tri–Port Constructors, Inc., the contractor whose employees were involved in the accident which precipitated the investigation.

The facts heretofore enumerated are those certified by the Magistrate to this Court for consideration of both the civil contempt complaint lodged against Amoco, and Amoco's request that the inspection warrant as issued be quashed. For the reasons to be enumerated, the Court finds that while the Secretary of Labor is a proper party to secure an administrative search warrant, this particular warrant must be quashed.

## II. THE SECRETARY'S AUTHORITY TO REQUEST A WARRANT

Amoco initially set out in its "Motion to Quash" that it was undisputed that the Secretary had the authority to enter the plant for the purpose of conducting the inspection. Amoco's supporting argument addressed to the narrow issue of the entrance of a striking employee–representative under OSHA regulations was substantially broadened by its invitation for the Court to find the warrant invalid *en toto*. Amoco argues in support of this broader position: (1) that *valid* OSHA regulations do not provide for the Secretary or his agents to obtain administrative search warrants *ex parte*; and (2) that the Secretary's application for an administrative warrant does not comport with the Federal Rules of Criminal Procedure, specifically 41 F.R. Crim.P.

Amoco's first contention, that the Secretary has no authority to obtain an *ex parte*

---

1. The document presented by East upon Amoco's refusal to honor the administrative search warrant read as follows:

   Amoco Oil Company hereby states that it has not previously and does not at this time, deny entry to any Compliance Officer of the Department of Labor's Occupational Safety and Health Administration for the purpose of investigating an accident which occurred at this refinery on February 13, 1980.

   Any outside party except Tri–Port Constructors, Incorporated of Dickinson, Texas, is not properly part of this investigation. This includes representatives of the striking Oil, Chemical and Atomic Workers Union. Amoco refuses them entry into this refinery or participation in any form in the accident investigation.

administrative inspection warrant turns on the interpretation to be given the Secretary's inspection regulations; specifically, the validity of the December 1978 amendment to 29 C.F.R. § 1903.4, which now appears as 29 C.F.R. § 1903.4(d). It is Amoco's position that the 1978 amendment was not properly promulgated and is therefore ineffective.

In 1971, pursuant to its delegated rulemaking authority,[2] and after notice and comment, the Secretary promulgated what appears now as 29 C.F.R. § 1903.4.[3] This regulation sub-titled "Objection to Inspection" outlines the steps to be taken by a compliance officer when an employer refuses him entry, ultimately providing for *compulsory process*, if necessary. In January 1978 the Supreme Court of the United States rendered an opinion in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In the consideration of *Barlow's*, the Court dealt at length with

29 C.F.R. § 1903.4. In the final analysis the Court held that the Act was unconstitutional insofar as it purported to authorize inspections without a warrant or its equivalent. 436 U.S. at 325, 98 S.Ct. at 1827. The Court went on to indicate in a footnote that a regulation expressly providing for *ex parte* warrants would be within the Secretary's statutory authority. 436 U.S. at 320, n. 15, 98 S.Ct. at 1824.[4]

Following closely the *Barlow's* opinion, the Secretary enacted certain amendments to 29 C.F.R. § 1903.4. The section in question specifically states that:

> [f]or the purpose of this section, the term compulsory process shall mean the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent.

29 C.F.R. § 1903.4(d).

The rulemaking process, provided by 5 U.S.C. § 553[5] was not followed in the

---

**2.** 29 U.S.C. § 657(g)(2) provides as follows:
> The Secretary and the Secretary of Health, Education and Welfare shall each prescribe such rules and regulations as he may deem necessary to carry out their responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment.

**3.** 29 C.F.R. § 1903.4(a) provides:
> Upon a refusal to permit a Compliance Safety and Health Officer, in exercise of his official duties, to enter without delay and at reasonable times any place of employment or any place therein, to inspect, to review records, or to question any employer, owner, operator, agent, or employee, in accordance with 1903.3, or to permit a representative of employees to accompany the Compliance Safety and Health Officer during the physical inspection of any workplace in accordance with § 1903.8, the Compliance Safety and Health Officer shall terminate the inspection or confine the inspection to other areas, conditions, structures, machines, apparatus, devices, equipment, materials, records, or interviews concerning which no objection is raised. The Compliance Safety and Health Officer shall endeavor to ascertain the reason for such refusal, and shall immediately report the refusal and the reason therefor to the Area Director. The Area Director shall consult with the Regional Solicitor, who shall take appropriate action, including *compulsory process*, if necessary. (Emphasis added)

**4.** Insofar as the Secretary's statutory authority is concerned, a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent would appear to be as much within the Secretary's power as the regulation currently in force and calling for "compulsory process." *Marshall v. Barlow's, Inc.*, 436 U.S. at 320, n. 15, 98 S.Ct. at 1824 (1978).

**5.** 5 U.S.C. § 553 states in pertinent part:
> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
> (1) a statement of the time, place, and nature of public rule making proceedings;
> (2) reference to the legal authority under which the rule is proposed; and
> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be

adoption of the amendment, since the Secretary considered the amendment an interpretative rule exempt from rulemaking by 5 U.S.C. § 553(b).[6] Circuit Courts addressing the question of the validity of 29 C.F.R. § 1903.4(d) have found the regulation to be an interpretative rule whereby the term "compulsory process" was defined to include *ex parte* warrants, and accordingly, valid. *Accord, Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979); *Marshall v. W & W Steel Co., Inc.*, 604 F.2d 1322 (10th Cir. 1979).[7] This Court agrees with the position taken by the Ninth and Tenth Circuits. The 1978 amendment was an agency interpretative rule simply defining a term previously used in a legislative rule, in an attempt to comport with the Supreme Court's opinion in *Barlow's*; as such, the rulemaking requirement of 5 U.S.C. § 553 does not apply.[8] To interpret the regulations and the *Barlow's* opinion to

mean that warrants are constitutionally required and that OSHA administrative searches pursuant to a warrant are authorized but that the Secretary is not empowered to secure such a warrant would render the statute meaningless and undermine the Congressional objective.[9] *Cf., Marshall v. Huffhines Steel Co.*, 478 F.Supp. 986 (N.D. Tex. 1979).

■ In the alternative, Amoco argues that the Secretary is not an attorney for the government as defined in 54(c) F.R. Crim.P.[10] and accordingly not a person authorized to secure a warrant pursuant to 41(a) F.R.Crim.P.[11] While the Secretary and his authorized representatives may, arguably, not be one of those persons empowered under 41(a) F.R.Crim.P. to secure a search warrant, his actions are allowed under 41(h) F.R.Crim.P. which states in pertinent part:

made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication of service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

6. 5 U.S.C. § 553(b) states in pertinent part: [E]xcept when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

7. *But, see, Marshall v. Huffhines Steel Co.*, 488 F.Supp. 995 (N.D.Tex.1979).

8. For a general discussion on the distinction between legislative rules and interpretative rules, see 1978 Supplement to Davis, *Administrative Law Treatise*, § 5.03. Also, *see, Garelick Mfg. Co. v. Dillon*, 313 F.2d 899 (D.C.Cir.

1963) (Agency rule defining a phrase used in a previously issued legislative rule was an interpretative rule, not itself a legislative rule, and therefore exempt from notice and hearing requirements set out in the Administrative Procedure Act).

9. [T]he Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several *States and with foreign nations and to provide for the general welfare*, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources. 29 U.S.C. § 651(b).

10. Rule 54(c) F.R.Crim.P. provides in pertinent part:

"Attorney for the government" means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney and when applicable to cases arising under the laws of Guam means the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.

11. Rule 41(a) F.R.Crim.P. provides:

A search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record within the district wherein the property or person sought is located, upon request of a federal law enforcement officer or an attorney for the government.

This rule [Rule 41 Search and Seizure] does not modify any act, inconsistent with it, regulating search, seizure and the issuance and execution of search warrants in circumstances for which special provision is made.

The Supreme Court made it clear in *Marshall v. Barlow's, Inc.*, that probable cause in the criminal law sense is not required for an administrative search. 436 U.S. at 320, 98 S.Ct. at 1824. 29 C.F.R. § 1903.4(d), enunciating provisions for *ex parte* warrants read in conjunction with *Marshall v. Barlow's*, clearly indicate that application for OSHA administrative search warrants fall within the compass of exceptions enunciated in 41(h) F.R.Crim.P. of "circumstances for which special provision is made." The Advisory Committee notes also explain that this subsection of Rule 41 does not supercede but rather preserves all statutory provisions permitting searches in specific situations not otherwise explicitly set forth in the rule. *Marshall v. Huffhines Steel Co.*, 478 F.Supp. 986, 989 (N.D.Tex.1979). The Court declines Amoco's invitation to declare the warrant invalid *en toto* and finds the Secretary a proper party to seek an administrative search warrant.

III. *INTERPRETATION OF 29 U.S.C. § 657(e) AND 29 C.F.R. § 1903.8.*

Having determined the Secretary to be one with authority to request an administrative search warrant, the pivotal question is whether, by statute or regulation, the Secretary had the authority to seek and obtain the specific warrant in the instant case. Amoco contends that the Secretary was without authority to seek the instant warrant that ordered entry onto its premises of not only an authorized representative of the Secretary (an OSHA compliance officer); but also commanded entry of an employee–representative who represented striking OCAW employees, who were separated from the company, and not present on company premises by reason of their strike status, both at the time of the accident that gave rise to the inspection, and the time of the inspection itself. The Secretary contends that there is statutory and regulatory authority to support the right of the employees to have an employee–representative accompany the compliance officer on his inspection, and that the temporary strike status of the employees had no effect on these provisions. The narrow question presented then, is whether for the purposes of interpreting the Act, striking employees have the same right to an accompanying representative that they would ordinarily have, but for their strike status.

The statutory provisions governing inspections and investigations are set forth in 29 U.S.C. § 657 *et seq.* The pertinent provision with regard to an employee–representative accompanying the Secretary is set forth in 29 U.S.C. § 657(e) and provides:

Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection. Where there is no authorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

Implementing regulations are set forth in 29 C.F.R. § 1903.8(a), (b).[12]

---

**12.** 29 C.F.R. § 1903.8(a), (b) state:

(a) Compliance Safety and Health Officers shall be in charge of inspections and questioning of persons. A representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Compliance Safety and Health Officer during the physical inspection of any workplace for the purpose of aiding such inspection. A Compliance Safety and Health Officer may permit additional employer representatives and additional representatives authorized by employees to accompany him where he determines that such additional representatives will further aid the inspection. A different employer and employee representative may accompany the Compliance Safety and Health Officer during each different phase of an inspection if this will

The starting point of any inquiry into the scope of the statutory provision and the Secretary's regulations must be in the legislative history of the particular provisions: the query, why was a provision made for an accompanying employee–representative on the inspection tour.

Senate Reports on the legislative history of OSHA set out some of the importance felt in having an employee–representative accompany the government inspector during the physical inspection of the work site in the following manner:

> During the field hearings held by the Subcommittee on Labor, the complaint was repeatedly voiced that under existing safety and health legislation, employees are generally not advised of the content and results of a Federal or State inspection. Indeed, they are often not even aware of the inspector's presence and are thereby deprived of an opportunity to inform him of alleged hazards.
>
> Much potential benefit of an inspection is therefore never realized, and workers tend to be cynical regarding the thoroughness and efficacy of such inspections. Consequently, in order to aid in the inspection and provide an appropriate degree of involvement of employees themselves in the physical inspections of their own places of employment, the committee has concluded that an authorized representative of employees should be given an opportunity to accompany the person who is making the physical inspection of a place of employment under section 9(a). Correspondingly, an employer should be entitled to accompany an inspector on his physical inspection, although the inspector should have an opportunity to question employees in private so that they will not be hesitant to point out hazardous conditions which they might otherwise be reluctant to discuss.

S.Rep.No.91–1282 91st Cong., 2nd Sess. (1970).

In debate, one of the bill's sponsors explained the importance of allowing an employee–representative along on the physical inspection:

> First. In the provisions for inspections, the committee bill permits an authorized representative of employees, subject to regulations by the Secretary of Labor, to accompany inspectors in order to aid the inspection, or if there is no authorized representative, the inspector is required to consult with a reasonable number of employees.
>
> This section reflects a fair and practical resolution of the conflicting viewpoint of employers who fear that an unlimited right of employees to accompany inspectors could lead to disruption of production operations and, the viewpoint of employees who urgently believe they need their representatives to participate and assist in the inspection which is so important to their continued protection on their job.
>
> I think this is an important point. Certainly no one knows better than the working man what the conditions are, where the failures are, where the hazards are, and particularly where there are safety hazards. The opportunity to have the working men accompany inspectors is manifestly wise and fair, and in arriving at the objectives of this legislation I think it is one of the key provisions of the bill presented to the Senate by the committee.

116 Cong.Rec. 37340 (1970) (remarks of Mr. Williams).

Clearly, the impetus of these passages is the fact that an employee has some interest in the safety of his workplace, and ordinarily, would have some level of expertise of his workplace's conditions and safety hazards. This underlying reasoning seems logical in

---

not interfere with the conduct of the inspection.

(b) Compliance Safety and Health Officers shall have authority to resolve all disputes as to who is the representative authorized by the employer and employees for the purpose of this section. If there is no authorized representative of employees, or if the Compliance Safety and Health Officer is unable to determine with reasonable certainty who is such representative, he shall consult with a reasonable number of employees concerning matters of safety and health in the workplace.

the "ordinary" set of circumstances; where it is the working employees who are exposed to any hazard and the working employees who would have observed the pre-accident site and procedures utilized that may have contributed to the accident that precipitated an OSHA investigation.

The instant case does not present these "ordinary" circumstances. OCAW employees who requested representation on the Amoco accident site had not been working at the site for more than one month's time.[13] Employees who had both the safety interest in the site, and the opportunity to observe the pre-accident site and procedures surrounding the accident under investigation were the employees of Tri-Port Constructors, Inc. rather than OCAW employees.[14] OCAW employees, who had been absent from the Amoco plant for more than one month on the date of the accident and absent two month's time on the date the warrant was refused, would hardly have been persons knowledgeable, of the conditions that precipitated the accident or of any potential hazards that remained on the Tri-Port Constructors work site.

The warrant's command to allow entry of an OCAW employee-representative in this unique set of circumstances, where the employees who sought represen-

tation on the inspection were separated from the company by reason of their strike status,[15] during both the time of the accident which precipitated the inspection *and* during the time of the actual inspection, sufficiently distinguishes the instant case from those situations envisioned in the legislative history to place the warrant's command beyond the scope of regulations currently in force and effect.[16]

## IV. *CONCLUSION*

For the reasons stated herein, it is therefore

ORDERED, ADJUDGED and DECREED that Petitioner Department of Labor's "Request for Summary Contempt" is DENIED; and further

ORDERED that Respondent Amoco Oil Company's "Motion to Quash the Inspection Warrant" is GRANTED.

**13.** OCAW workers went on strike January 3, 1980; the accident occurred at the Amoco plant on February 18, 1980; and the attempt to execute the warrant compelling entry of an OCAW employee--representative was made on March 7, 1980. *See,* Background Facts, *infra.*

**14.** The document Amoco presented to the OSHA compliance officer upon refusal of the warrant indicated Amoco's willingness to allow Tri Port Constructor's participation in the investigation tour. *See,* n. 1, *infra.*

**15.** The Court is not persuaded by the Secretary's argument that for the purpose of interpreting terms used in the Occupational Safety and Health Act the Court is bound by the interpretation of terms used in the National Labor Relations Act. Specifically, the Secretary's argument that since under NLRA striking employees remain employees for the remedial purposes of the NLRA, the same interpretation must be given to striking employees under OSHA. Clearly, the two Acts have different underlying scopes and purposes, and gener-

ic terms common to both Acts must be interpreted in light of those distinct purposes.

**16.** The Court is not unmindful that implementing regulations provide for a compliance officer's accompaniment by third parties who are *not* employees. Specifically, 29 C.F.R. § 1903.-8(c) provides:

> The representative(s) authorized by employees shall be an employee(s) of the employer. However, if in the judgment of the Compliance Safety and Health Officer, good cause has been shown why accompaniment by a third party who is not an employee of the employer (such as an industrial hygienist or a safety engineer) is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace, such third party may accompany the Compliance Safety and Health Officer during the inspection.

However, the Secretary has never held Mr. Hamby out as a third party exception, but rather has consistently presented him as an authorized OCAW employee--representative.