**Raymond J. DONOVAN, Secretary of Labor, Plaintiff-Appellant,**

v.

**HUFFINES STEEL COMPANY, Defendant-Appellee.**

No. 80–1017.

United States Court of Appeals, Fifth Circuit. Unit A

May 15, 1981.

Charles I. Hadden, Benjamin W. Mintz, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

McCarty & Wilson, Robert E. Rader, Jr., Ennis, Tex., for defendant-appellee.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE\*, District Judge:

GARZA, Circuit Judge:

We affirm the decision of the District Court based on its opinion of November 27, 1979, reported at 488 F.Supp. 995.

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, concurring in the result:

The only question raised by this case is whether the words "compulsory process" in an OSHA regulation, 8 C.F.R. § 1903.4, include warrants issued *ex parte.* Concluding that they do not, the district court quashed a warrant issued in 1979 without notice to the party whose premises were to be inspected. I would have acted differently, but circumstances have now so changed that I would simply dismiss the appeal as moot in practical effect if not in theory.

Shortly after the regulation was promulgated, OSHA in 1972 issued an internal operations manual that instructed the area director to secure an "inspection warrant" if an employer objected to an inspection. Department of Labor, OSHA, Compliance Operations Manual, at V–6 (January 1972). The manual contained an instruction not to give the employer advance warning that an inspection would take place pursuant to the warrant, thus indicating that "compulsory process" envisioned an *ex parte* proceeding. These provisions were repeated in the 1974 edition of the manual. However, the term "inspection warrant" was replaced in the 1976 edition with a broader term, "compulsory process." Department of Labor, OSHA Field Operations Manual Change 2, at V–5 (January 1976). This change, perhaps merely a matter of eliminating the previous elegant variation, brought the manual into agreement with the term used in the regulation. The semantic change was *not* accompanied by deletion of the prohibition against advance warning. Therefore, no change in meaning was wrought.

Nevertheless, during this period the agency's practice varied. In some cases OSHA sought *ex parte* warrants, while in others, after an inspection request was refused, it sought orders compelling entry after notice and an adversary proceeding.[1] Although the apparent violation of the advance warning prohibition is not explained, neither procedure is inconsistent with the term compulsory process.

There is, of course, support for the proposition that the regulation, as interpreted by OSHA, did not authorize *ex parte* warrants. In *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the government argued that warrantless searches were necessary to enforce the Act. The Solicitor General suggested to the Supreme Court that adversary process and

---

\* District Judge of the Western District of Texas, sitting by designation.

1. The government's brief indicates that 30 OSHA warrant cases decided by or pending in the courts of appeals involve inspection warrants obtained in *ex parte* proceedings before the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The district judge also recognized that OSHA sought *ex parte* search warrants before the decision in *Barlow's.*

warrantless searches were the only available alternatives. The Solicitor General argued that the notice necessitated by adversary proceedings was incompatible with effective enforcement. The government presented the case in this all-or-nothing form seemingly as a litigation strategy. Not surprisingly, the Supreme Court realized that *ex parte* warrants could satisfy OSHA's enforcement concerns while also protecting an employer's fourth amendment rights. As a result of the government's strategy, however, the Supreme Court included statements in *Barlow's* that conflict with OSHA's interpretation of its regulation.

Like the Third Circuit in *Cerro Metal Products v. Marshall,* 620 F.2d 964 (3d Cir. 1980), *aff'g* 467 F.Supp. 869 (E.D.Pa.1979), the district judge relied heavily on the Supreme Court's statements. While these obiter dicta are strong, they conflict with observations made elsewhere in the opinion. For example, the court recognized that "the Secretary's own regulations, 29 C.F.R. § 1903.6 (1977), indicate that *surprise* searches are indeed contemplated." 436 U.S. at 317, 98 S.Ct. at 1823, 56 L.Ed.2d at 314 (emphasis supplied).

To paraphrase Judge Sneed, writing in *Stoddard v. Marshall,* 627 F.2d 984 (9th Cir. 1980), a conclusion that the Supreme Court's statements in *Barlow's* amount to a *determination* that the regulation did not, in fact, authorize *ex parte* warrants accords the statements the force of decision when they were merely background. Therefore, I would recognize that OSHA has in fact interpreted the regulation as authorizing *ex parte* warrants (in addition to adversary process), that its interpretation is consistent with the plain meaning of the words used in the regulation and, that, therefore, the warrant involved was properly issued.

Nonetheless, I concur in the result. The controversy is now virtually moot. We consider only the interpretation of regulations adopted in 1971. These regulations are now superseded. After the question concerning their interpretation arose, OSHA first, in 1978, adopted an interpretive ruling ex-

plaining that the regulations permitted an *ex parte* warrant, 43 Fed.Reg. 59,839 (Dec. 22, 1978), then, in 1980, changed the regulations after complying with the Administrative Procedures Act. 45 Fed.Reg. 65,916–24 (Oct. 3, 1980).

Two courts of appeals have already considered the issue we are asked to decide. The Third Circuit held that the regulations did not permit warrants without notice, *Cerro Metal Products v. Marshall,* 620 F.2d 964 (3d Cir. 1980), while the Ninth Circuit reached the opposite conclusion, *Stoddard Lumber Co., Inc. v. Marshall,* 627 F.2d 984 (9th Cir. 1980). Two district courts within this circuit, disagreeing with the district court here, have held that the regulation allows *ex parte* warrants. *Amoco Oil Co. v. Marshall,* 496 F.Supp. 1234, 3 Empl. Safety & Health Guide (CCH) ¶ 24,789 (S.D.Tex. Sept. 9, 1980), *appeal docketed,* No. 80–2235) (5th Cir. Nov. 19, 1980); *West Point Pepperell, Inc. v. Marshall,* 496 F.Supp. 1178, 3 Empl. Safety & Health Guide (CCH) ¶ 24,738 (N.D.Ga. Aug. 28, 1980), *appeal docketed,* No. 80–7898 (5th Cir. Oct. 21, 1980). Appeals have been docketed in those cases and they are both in the briefing stage. *See also Marshall v. Seward International, Inc.,* 510 F.Supp. 314, 3 Empl. Safety & Health Guide (CCH) ¶ 24,794 (W.D.Va. Sept. 19, 1980), *appeal docketed,* No. 80–1708 (5th Cir. Oct. 9, 1980); *In Re Establishment Inspection of Metro-East Mfg. Co.,* No. 80–5125 (S.D.Ill. Aug. 22, 1980), *appeal docketed,* No. 80–2509 (7th Cir. Oct. 31, 1980); *In re Establishment Inspection of Century Casting Corp.,* No. 80–5119 (S.D.Ill. Aug. 26, 1980), *appeal docketed,* No. 80–2510 (7th Cir. Oct. 31, 1980); *In re Establishment Inspection of Ingersoll-Rand Co.,* No. 80–130 (W.D.N.Y. June 20, 1980).

This is too much ado about little, if not nothing. OSHA does not point to any other cases arising before the adoption of the amended regulations that would be affected by the result here. The sole reason OSHA advances to justify issuance of a 1981 warrant based on conditions existing in 1979 is that it might now have difficulty in estab-

lishing an adequate basis for the issuance of a warrant. If, however, the conditions complained of at the Huffines plant still exist, doubtless the same employee who once alerted OSHA will again communicate with the agency, and this information will enable it to get a warrant. There is no reason OSHA may not interview employees to ascertain the present situation if it considers such action imperative. On the other hand, if conditions have been altered, then the sole remaining issue is whether OSHA may now enter premises in an effort to determine whether eliminated conditions violated its regulations, a vain pursuit, for only testimony could establish what had been but is now no more. This case appears to me now to present the characteristics of a feud rather than a genuine dispute about whether there is in fact a violation of a safety condition.

Therefore, I would not aggravate the tendentiousness of the parties or tax the courts with further proceedings. In lawsuits as in wars, there is a time to lay down arms, fold tents, and turn to other matters.