**DAVIS METAL STAMPING, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and William E. Brock, Secretary of Labor, Respondents.**

No. 85–4403.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1986.

Lacey L. Gourley, Gardere & Wynne, Ronald M. Gaswirth, Joseph F. Guida, Dallas, Tex., for Davis Metal Stamping, Inc.

Ray H. Darling, Executive Secretary, Washington, D.C., for Occupational Safety and Health Review Com'n.

Sandra Lord, U.S. Dept. of Labor, Office of Solicitor, Washington, D.C., for Secretary of Labor.

Before GEE, GARZA, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

This is an appeal from an order of the Occupational Safety and Health Review Commission ("OSHRC" or "the Commission") issued on April 15, 1985 against Davis Metal Stamping, Inc. (Davis Metal). The Commission ruled that an *ex parte* administrative search warrant obtained to inspect Davis Metal's plant in 1978 was invalid, but that because of the good faith exception, the evidence gathered against Davis Metal during the inspection should not be suppressed despite the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (*Leon*). In a similar case decided today,

*Smith Steel Casting Co. v. Brock*, 800 F.2d 1329 (5th Cir.1986) (*Smith Steel*), we held that under the principles announced in *Leon* and in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the exclusionary rule does not extend to OSHA enforcement actions directed at correcting violations of occupational safety and health standards. *Smith Steel* also holds that the exclusionary rule does apply to OSHA proceedings where the object is to assess penalties against the employer for past violations of OSHA regulations *unless*, under the reasoning announced in *Leon*, the good faith exception can be applied to the Secretary of Labor's actions in obtaining the tainted evidence.

### Facts

On September 18, 1978, an OSHA compliance officer named Sarnacki attempted to conduct an inspection of Davis Metal's worksite in Dallas, Texas. When he arrived there, he was met by the president and vice-president of the company; Raleigh Davis, Sr. and Raleigh Davis, Jr., respectively.

The parties disagree about what Davis, Jr. said when Sarnacki asked to enter the plant to conduct the OSHA inspection. According to Davis Metal's brief, Davis, Jr. said only that certain mechanical power presses in the plant were unguarded. The Secretary of Labor's brief asserts that Davis, Jr. stated that there were mechanical power presses in the establishment, that he was aware of the OSHA requirements for guarding, and that he could not guard the presses because of a cut in production. He is further alleged to have stated that he could not afford to stay in business if he had to guard the machines.

Whatever was said, Davis, Jr. and Davis, Sr. conferred briefly and informed the compliance officer that they would not allow him to inspect the workplace, whereupon Sarnacki departed. Nine days later, Sarnacki presented a United States Magistrate with a request for an *ex parte* inspection warrant along with a supporting affidavit.

The affidavit contained the following language:

> The facts tending to establish grounds for issuance of the Inspection Warrant are as follows:
>
> The major activity of the above referenced company is metal stamping on a job order basis. This includes metal display shelving, automotive stampings, metal stampings, including metal parts for shipping containers and air conditioner parts. The inspection was scheduled on a high hazard industry basis. On September 18, 1978, at approximately 9:15 AM I attempted an inspection of the facility and contacted the firms [sic] president Mr. Raleigh F. Davis, Sr., who in turn referred me to the vice-president, Raleigh F. Davis, Jr. Credentials were presented to both. Mr. Davis Jr. was beligerent [sic] and stated that he did not feel he could allow an inspection of his facilities due to the fact that his mechanical power presses and other equipment were not in compliance. He felt there was too much government intervention in the country. He further stated that if he allowed the inspection and a citation was issued with proposed monetary penalties that he would be forced to close, and in no way could he meet OSHA standards.
>
> At this point, Mr. Davis Jr. conferred with his father, Dr. [sic] Davis Sr. about allowing the inspection and both agreed at this point to refuse entry.

The warrant was issued and Sarnacki conducted the inspection the next day. OSHA subsequently issued a number of citations alleging willful, serious, and other-than-serious violations of 29 C.F.R. §§ 1903.2, 1904.5, 1904.7, 1910.212, 1910.215, 1910.-217, 1910.219, 1910.242, 1910.252, and 1910.309 (1978).

Davis Metal contested the citations, moving to dismiss them on the grounds that the inspection warrant was issued without probable cause and that the warrant was invalid because the regulation in effect at the time, 29 C.F.R. § 1903.4 (1978), did not authorize *ex parte* warrants. An administrative law judge ("ALJ") denied Davis Metal's motion on both grounds, then certified his order for immediate appeal. OSHRC, however, dismissed the appeal and remanded the case for further proceedings. In the additional proceedings, before a different ALJ, Davis Metal renewed its motion to dismiss, again alleging the invalidity of the *ex parte* warrant. This time the ALJ ruled in Davis Metal's favor and vacated the citations. The Secretary appealed to OSHRC on the issue of the validity of the *ex parte* warrant.

The Commission reversed, holding that the Secretary's *ex parte* inspection warrant was valid, and remanded the case for a determination on the merits of the violations. On remand, the ALJ substantially affirmed the OSHA citations, but reduced the total penalty from the original $6,190 to $2,235.[1] Davis Metal again petitioned the Commission for review on the issue of the validity of the warrant and moved to suppress the evidence gathered under it, but did not appeal the citations on the merits. OSHRC granted review on three issues: (1) whether the Secretary's regulation at 29 C.F.R. § 1903.4 (1978), as originally promulgated, authorized *ex parte* inspection warrants, (2) assuming the *ex parte* warrant at issue in the case was within the Secretary's authority under his regulation, whether there was probable cause for issuance of the warrant, and (3) if the warrant is found invalid either because it exceeded the Secretary's authority or because it lacked probable cause, what remedy should be applied.

On the issue of whether the regulation permitted the Secretary to obtain an *ex parte* warrant at the time of the Davis

---

**1.** The ALJ found that Davis Metal's failure to guard the mechanical power presses constituted a willful violation of the OSH Act. By quoting it in his opinion, he apparently concluded that the Secretary's version of the story was correct, "the testimony of Mr. Davis indicates that he knew he was required to guard [Davis Metal's] presses and he chose to utilize an alternative method, one specifically rejected by the [OSHA] standard itself." *Secretary of Labor v. Davis Metal Stamping, Inc.,* OSHRC No. 78–5775, slip op at 17 (March 28, 1983).

Metal search, the Commission simply assumed that the Davis Metal warrant was invalid, stating:

> On this second review of the case, the parties again debate the correctness of the Commission's previous holding that *ex parte* warrants could validly be issued under the original version of section 1903.4. Thge Secretary urges that we follow the law of the case doctrine and find that the Commission's initial holding in this case is controlling. *See Arizona v. California,* 460 U.S. 605 [103 S.Ct. 1382, 75 L.Ed.2d 318] (1983). The parties do not seriously dispute, however, that the United States Court of Appeals for the Fifth Circuit—to which Davis Metal asserts it would appeal any adverse decision—would inevitably hold the warrant in this case invalid under *Donovan v. Huffines Steel Co.,* 645 F.2d 288 (5th Cir.1981). *See Smith Steel Casting Co. v. Donovan,* 725 F.2d 1032 (5th Cir.1984) (reversing Commission decision upholding validity of *ex parte* warrants as "directly contrary to *Huffines* "). The parties also do not dispute that the Fifth Circuit would be concerned with the Commission's view of whether evidence gathered during the inspection should be suppressed. *Id.* at 1036 (remanding for consideration of whether suppression was an appropriate remedy). Judicial prudence and economy therefore require that we reconsider our earlier decision in this case, treat the warrant as invalid

under Fifth Circuit precedent, and consider whether evidence should be suppressed. We conclude that it should not. *Davis Metal Stamping, Inc.,* 12 O.S.H.C. (BNA) 1259, 1984–85 Occup. Safety & Health Dec. (CCH) ¶ 27,235 at 35,156 (1985).

In deciding to admit the evidence against Davis Metal under the good faith exception to the exclusionary rule, the Commissioners reached the issue of probable cause. But their analysis of probable cause was not conducted with a view toward declaring the warrant invalid, but rather to assay the "good faith" of the Secretary in order to determine whether or not to apply the good faith exception to the exclusionary rule.[2] In separate opinions, both Commissioner Buckley and Commissioner Cleary relied on the principles of *Leon* in upholding admission of the evidence against Davis Metal pursuant to the good faith exception to the exclusionary rule.[3]

Davis Metal's objective in bringing this appeal is to exclude the evidence against it obtained under the warrant.[4] We note at the outset that the only issue in this case is whether the evidence against Davis should be excluded for purposes of the monetary penalties assessed against it. This is because we held today in *Smith Steel Casting Co. v. Brock,* 800 F.2d 1329 (5th Cir. 1986) that the exclusionary rule does not apply to OSHA proceedings conducted for the purpose of correcting violations of occupational safety and health standards.

---

**2.** As we read *Leon,* courts may exercise discretion in their decision-making processes on the issue of probable cause. They may choose to look at probable cause in determining a search warrant's validity, i.e., in deciding whether the Fourth Amendment has been violated. Alternatively, courts may analyze probable cause in the context of deciding whether the officers' conduct manifested objective good faith. *Leon* tells us that if no important Fourth Amendment question is presented, a court may turn immediately to a consideration of the officers' good faith without resolving the Fourth Amendment issue. *Leon,* 468 U.S. at 924–25, 104 S.Ct. at 3422–23. The warrant in today's case is invalid for reasons other than a Fourth Amendment violation. Accordingly, we analyze Davis Metal's lack-of-probable cause argument in the context of the compliance officer's good faith only.

**3.** OSHRC is usually composed of three members. When this case was decided, there was a vacancy on the Commission, therefore, the opinions of two Commissioners, each voting to affirm the ALJ, constitute the opinion of the Commission.

**4.** Davis Metal states in its brief that it does not appeal the Commission's determination that the warrant was invalid, despite the fact that *Marshall v. Huffines Steel Co.,* 488 F.Supp. 995 (N.D. Tex.1979), *aff'd,* 645 F.2d 288 (5th Cir.1981) was decided after the *ex parte* warrant was issued against Davis Metal. The Secretary asserts that our decision in *Huffines* should not be applied retroactively, but did not file a cross appeal on this issue. Accordingly, we do not reach it.

Accordingly, all of the evidence considered by the ALJ on the non-penalty aspects of the merits of citations is admissible.

Davis Metal's first contention is that there was no probable cause to support the issuance of the warrant. From our reading of the Davis Metal brief, this argument is made as a fall-back position to be occupied in case we decide that the exclusionary rule does not apply to searches invalidated for reasons other than lack of probable cause. Because we held today in *Smith Steel* that the exclusionary rule and its good faith exception apply to *ex parte* administrative search warrants invalidated because 29 C.F.R. § 1903.4 (1980) did not authorize *ex parte* warrants, we find it unnecessary to decide the probable cause issue except as it relates to the issue of the good faith of the Secretary when considered with the exclusionary rule.

Davis Metal's next argument is that the good faith exception to the exclusionary rule does not apply in this case. It advances two reasons for this contention: (1) that OSHRC rejected the use of the good faith exception to the exclusionary rule in *Secretary of Labor v. Sarasota Concrete Co.*, 9 BNA OSHC 1608 (1981), *aff'd*, 693 F.2d 1061 (11th Cir.1982) (*Sarasota Concrete*), and *Sarasota Concrete* controls the suppression issue in this case, and (2) if the good faith exception is applicable to OSHA proceedings, there was no good faith on the Secretary's part on the facts of this case.

First, we noted in *Smith Steel* that the Eleventh Circuit in *Sarasota Concrete* "held that OSHRC was not bound to apply the good faith exception announced in *United States v. Williams*, 622 F.2d 830 (5th Cir.1980) (en banc), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981), but did not rule that OSHRC is prohibited from adopting the good faith exception." *Smith Steel*, 800 F.2d at 1336 n. 3. Davis Metal asserts that neither Commissioner in today's case specifically stated that the Commission was overruling

*Sarasota Concrete.*[5] Our study of both Commissioners' opinions convinces us that both Commisioners relied on the principles of *Leon* for their decision to apply the good faith exception in an invalid search warrant case. As we noted in *Smith Steel*, "to hold that OSHRC cannot adopt the principles of *Leon* without expressly declaring that it will not follow *Sarasota Concrete* would be impermissible nit-picking on our part. Administrative decisionmakers must be free to fashion their rulings in accordance with the evolution of the law. For us to hold otherwise would freeze the development of administrative law." *Smith Steel*, 800 F.2d at 1336. Accordingly, we reject the notion that *Sarasota Concrete* controls the suppression issue in this case. Additionally, Davis Metal seeks to vacate the citations because it claims that OSHRC's decision was arbitrary in that the Commission refused to apply *Sarasota Concrete*. In light of the foregoing discussion of the *Sarasota Concrete* issue, we find no merit in this contention.

Davis Metal argues that the good faith exception to the exclusionary rule should not apply on the facts of this case. According to *Leon* and its predecessors, the purpose of the exclusionary rule is to deter official misconduct and remove inducements to unreasonable invasions of privacy. *Leon*, 468 U.S. at 900, 104 S.Ct. at 3409. Whether the exclusionary rule is applied in a particular case is a question resolved "by weighing the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." *Leon*, 468 U.S. at 907, 104 S.Ct. at 3412.

Davis Metal argues that the good faith exception should not apply in this case for two reasons: (1) that the Secretary should have known that 29 C.F.R. § 1903.4 (1978) did not permit him to seek an *ex parte*

5. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was decided after

*Sarasota Concrete.*

warrant in September of 1978, when the warrant was issued, and (2) that the Secretary submitted a supporting affidavit to the magistrate containing false statements made knowingly and intentionally, or with reckless disregard for the truth. Turning to the first reason, we find no official misconduct to deter in the Secretary's seeking of the *ex parte* warrant. The original version of 29 C.F.R. § 1903.4 did not expressly prohibit the Secretary from seeking an *ex parte* warrant. As Chairman Buckley observed in his opinion:

> Although certain language in *Marshall v. Barlow's, Inc.*, 436 U.S. 307 [98 S.Ct. 1816, 56 L.Ed.2d 305] (1978), had suggested that the Supreme Court viewed the regulation as not providing for ex parte warrants,[5] no federal court ... had held that ex parte warrants were unauthorized until after this warrant was executed. Only the somewhat equivocal statements in *Barlow's* which were not central to the decision, suggested that the regulation might preclude such warrants. Under the circumstances, the Secretary was entitled to rely on his own interpretation of his regulation.

> [5] Referring to the original version of section 1903.4, the Court said, "the kind of process ... apparently anticipated by the regulation provides notice to the business operator." 436 U.S. at 318, 98 S.Ct. at 1823. The Court further stated:
>
> > Insofar as the Secretary's statutory authority is concerned, a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent would appear to be as much within the Secretary's power as the regulation currently in force and calling for "compulsory process."
>
> 436 U.S. at 320 n. 15, 98 S.Ct. 1824 n. 15.

*Davis Metal Stamping, Inc.*, 12 O.S.H.C. (BNA) 1259, 1984–85 Occup. Safety & Health Dec. (CCH) ¶ 27,235 at 35,157 (1985). Additionally, 29 C.F.R. § 1903.4 (1986) has now been amended to permit the Secretary to seek *ex parte* warrants. We see no evidence of the Secretary's lack of good faith here.

In analyzing Davis Metal's false-statements-in-the-supporting-affidavit argument, we note the Supreme Court's reiteration in *Leon*, a criminal case, of its holding in *Franks v. Delaware:* [438 U.S.

154, 98 S.Ct. 2674, 57 L.Ed.2d 667] "Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. However, we also observe the Supreme Court's remarks in *Marshall v. Barlow's, Inc.*, an OSHA warrant case:

> Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. *Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based ... on specific evidence of an existing violation....*

*Marshall v. Barlows, Inc.*, 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978) (footnote omitted) (emphasis added). Accordingly, the question before us is whether the benefit of deterring the alleged misconduct by the OSHA compliance officer will justify the cost of suppressing the evidence against Davis Metal. We think not.

Davis Metal accuses the Secretary of acting improperly in obtaining the warrant because the compliance officer's supporting affidavit contained inaccurate information. Davis Metal premises this argument on two particular statements in the affidavit. We agree with the Commissioners that although the statements were technically inaccurate, their inclusion in the affidavit did not constitute conduct by the Secretary that warrants suppressing the evidence.

We agree with Chairman Buckley's analysis of the evidence and reproduce it here:

> First, Davis Metal contends that the affidavit falsely states that Davis Metal manufactured "metal display shelving" and other items that placed it among high hazard industries that were scheduled for inspection. Davis Metal's vice

president testified that the company did not make such shelving. He also testified, however, that the compliance officer did not ask and he did not state whether Davis Metal made such shelving. Rather, the official told the compliance officer that the company made special order items such as stereo speaker grills. The compliance officer believed that Davis Metal manufactured metal shelving because he had read a statement to that effect in the *1977–78 Directory of Texas Manufacturers,* a publication of the Bureau of Business Research of the University of Texas. The Directory lists Texas manufacturers, the products made by them, and the Standard Industrial Classification (SIC) code accorded to makers of those products. The OSHA office for which the compliance officer worked had received a computerized sheet from OSHA headquarters in Washington, D.C. that contained SIC code numbers reflecting high hazard industries. Two of those SIC numbers, including the one for metal shelving, appeared in the Directory following the products allegedly manufactured by Davis Metal. There is no evidence in this record that the compliance officer had reason to distrust the accuracy of the Directory. Indeed, the compliance officer's resort to the Directory shows commendable diligence. The Chairman therefore finds that although the Directory gave the compliance officer erroneous information, his reliance on it did not amount to misconduct.

Second, Davis Metal points to the statement in the affidavit by the compliance officer that the same official admitted the company's "mechanical power presses and other equipment were not in compliance." This Davis Metal official subsequently testified that he had stated only that certain machinery, including the mechanical power presses, were "not guarded in certain spots." The official

also testified that while the machines were unguarded, he nevertheless thought they were in compliance because he had ordered employees not to put their hands in the point of operation and had given them tools to hold stock. He evidently did not tell the compliance officer, however, that he thought these measures constituted compliance. The compliance officer acknowledged that the Davis Metal official had stated the machines were not guarded, rather than not in compliance. The compliance officer considered a lack of guarding to mean that the machines were not in compliance, however. On cross-examination, he also acknowledged that 29 C.F.R. § 1910.217, the standard for mechanical power presses, makes a distinction between point of operation "guards" and point of operation "devices."[6] The former are barriers while the latter automatically withdraw the operator's hands or prevent normal press operation if the operator's hands are inadvertently within the point of operation. *See* sections 1910.211(d)(11) and (32) (definitions). The compliance officer testified, however, that the Davis Metal official did not indicate that the machines had any point of operation devices.

Chairman Buckley finds no basis for suppressing evidence based on this misstatement. The compliance officer reasonably understood the statement of Davis Metal's vice president, that the company's mechanical power presses were not guarded, to mean that the presses did not comply with the standard. The Davis Metal official did not suggest to the compliance officer that he was drawing a technical distinction between guards and devices—a distinction that is rarely made in common speech. The official did not indicate to the compliance officer that any point of operation devices were being used with the presses

6. Section 1910.217(c)(1)(i) provides:
1910.217 *Mechanical Power Presses*
\* \* \* \* \* \*
(c) *Safeguarding the point of operation—*
(1) *General requirements.* (i) It shall be the responsibility of the employer to provide and insure the usage of "point of operation

guards" or properly applied and adjusted point of operation devices on every operation performed on a mechanical power press. See Table O–10.
*Davis Metal Stamping, Inc.,* 12 O.S.H.C. (BNA) 1259, 1984–85 Occup. Safety & Health Dec. (CCH) ¶ 27,235 at 35,157–58 (1985).

and evidently did not state to him that he considered warnings and hand tools to constitute compliance. Finally, Davis Metal's vice president's statement to the compliance officer that the company could not stay in business if required to guard the machines also could reasonably have led the compliance officer to infer that Davis Metal was not using any form of protection permitted by section 1910.217.

We agree with the Commission that the compliance officer reasonably believed that he had specific evidence of an existing OSHA violation because of the admission made by Davis, Jr. concerning the unguarded mechanical power presses. We hold that this was sufficient probable cause for purposes of applying the good faith exception to the exclusionary rule.[7] Therefore, we hold that the evidence against Davis Metal was properly admitted for purposes of assessing the penalties against the firm. The Commission's denial of Davis Metal's motion to suppress the evidence is AFFIRMED.

---

**7.** Accordingly, we do not reach the issue of whether *Brock v. Gretna Machine & Ironworks,* *Inc.,* 769 F.2d 1110 (5th Cir.1985) might invalidate the warrant in this case.