**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**HACKNEY, INC., and Wayne Schwedland, Defendants.**

No. Civ. 82–871–R.

United States District Court, W.D. Oklahoma.

March 23, 1984.

---

Robert A. Fitz and John Richards, U.S. Dept. of Labor, SOL, Dallas, Tex., for plaintiff.

Robert E. Rader, Jr., McCarty, Wilson, Rader & Mash, Ennis, Tex., R. Stephen Haynes, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAVID L. RUSSELL, District Judge.

This action was instituted by the Secretary of the United States Department of Labor, Occupational Safety and Health Administration (OSHA), upon its Petition for Adjudication in Contempt. The petition alleges that the Defendants, Hackney, Inc. and Hackney's plant manager, Wayne Schwedland, violated an order of this Court in refusing to allow an OSHA inspection after being served with a duly issued search warrant. The Defendants have counterclaimed for a declaratory judgment that OSHA's program for selection of establishments to be inspected is invalid as violative of the fourth and fifth amendments to the United States Constitution. The case was tried to the Court on July 28, 1983. The Court now issues this Opinion, which constitutes its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedures.

On January 26, 1982, OSHA Compliance Officer Landis Powell appeared at Hackney's plant in Enid, Oklahoma, to conduct a regularly programmed inspection of the premises. Plant manager Wayne Schwedland refused to allow that inspection, and on March 30, 1982, James Brown, III, a Supervisor Industrial Hygienist with OSHA, appeared before Magistrate Paul Lindsey to obtain an administrative search warrant. The magistrate reviewed the affidavit of Brown and other attached materials and concluded that administrative probable cause had been established. The magistrate then issued the Inspection Warrant ordering Hackney's to permit the OSHA inspection.

Brown gave the warrant to Compliance Officer Heather Hartman, who appeared at the Enid plant at 8:30 A.M. the following day. Hartman presented her credentials and the inspection warrant to Schwedland, who asked her to wait while he called Hackney's attorney. Hartman waited in the lobby until 9:30, returning to Schwedland's office only to find that she would have longer to wait. At 11:00 she called Brown, who instructed her to stand by while Schwedland determined if the inspection would be permitted. Hartman waited through the lunch period, and again called Brown at 1:00 P.M. and at 2:30 P.M. At this point Brown spoke by telephone with Schwedland, advising the plant manager that Hartman was being sent to her next inspection location. Brown further requested that Schwedland advise him when Schwedland decided if the inspection would be allowed. Hartman left the plant at this time, never having conducted the ordered inspection. At some time after 4:00 P.M., Schwedland telephoned Brown to inform him that no inspection would be allowed.

Thus, the issue before the Court is whether Hackney and Schwedland should be adjudged in contempt of court for refusal to comply with the Inspection Warrant. However, the Defendants' counterclaim raises the preliminary issue of the scope of review to be used by the Court in determining the sufficiency of the warrant issued by the magistrate. This issue arose first in the context of pretrial discovery; OSHA resisted the Defendants' attempts to discover materials other than those presented to the magistrate with the warrant application. The Defendants filed a Motion to Compel, to which OSHA responded by filing a Motion for a Protective Order. The Court referred the dispute to Magistrate Lindsey, who heard argument and ultimately foreclosed discovery on matters outside the warrant application. This order, issued September 3, 1982, was appealed to and affirmed by this Court on December 30, 1982. Thus, the Defendants were prevented from discovering materials alleged to support their counterclaim for declaratory judgment.

The issue was not yet resolved, however, as the Court permitted testimony at trial concerning matters other than those relevant to the warrant application. Now the Court must determine whether such evidence was properly admitted, and if so, whether Hackney and Schwedland can prevail on their counterclaim.

In *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the United States Supreme Court put to rest the notion that administrative inspections could be forced upon an unwilling business without a search warrant. A problem not put to rest, however, was the question of what scope of review should be used to examine a magistrate's probable cause finding in administrative search cases. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court reaffirmed the position that review of a search warrant must be limited to examination of materials presented to the magistrate, in the absence of intentional or grossly negligent false statements made to the issuing magistrate. Although *Franks* involved warrant review in a criminal case, it is generally accepted that the same reasoning applies to administrative inspection warrants. *See, e.g., West Point-Pepperell, Inc. v. Donovan*, 689 F.2d 950, 959 (11th Cir.1982); *Marshall v. Horn Seed Co., Inc.*, 647 F.2d 96, 100 (10th Cir. 1981). Thus, the traditional requirement that review of the warrant be confined to the "four corners" of the application is applicable to review of administrative inspection warrants.

The four corners requirement is often considered unsatisfactory in the administrative setting because it tends to preclude certain constitutional challenges during contempt proceedings. For example in *Marshall v. Barlow's*, the Supreme Court held that administrative probable cause could be established by showing that the selected workplace had been chosen for the inspection on the basis of an administrative plan derived from neutral sources. 436 U.S. at 321, 98 S.Ct. at 1825. Thus, the plan itself plays a key role in review of the inspection warrant. However, certain aspects of the plan not considered by the issuing magistrate in his probable cause finding might make the plan subject to challenge despite the fact that probable cause otherwise exists. If applied by the

reviewing court, the four corners requirement would prohibit review on those bases. It is this apparent "Catch 22" that is highlighted by the Defendants' counterclaim in this case; they seek to challenge the OSHA plan, CPL 2.25B, because it was allegedly improperly promulgated[1] and because it has an alleged discriminatory effect. Neither allegation is one which could have been considered by the magistrate in issuing the search warrant.

Thus, the question to be answered is how one may attack the validity of an OSHA selection plan, absent some indication of invalidity within the four corners of the warrant application. It would be gross understatement to say the courts have struggled in attempting to find a satisfactory answer to that question, but two basic methods have emerged. The more recent approach is that the party named in the inspection warrant refuses to permit the inspection and raises its challenges to the plan in contempt proceedings. Some courts have allowed parties in this posture to conduct discovery and present evidence outside the four corners requirement for purposes of attacking the validity of the plan. *See, e.g., Donovan v. Athenian Marble Corp.*, 535 F.Supp. 176, 180 (W.D. Okla.1982) (per Brett, J.). The obvious problem with this procedure is that it ignores the four corners requirement of warrant review. *See, e.g., Donovan v. Gretna Ironworks, Inc.*, No. CIV–82–1507 (E.D.La. Aug. 24, 1983) (Magistrate's Order finding *Franks* inapplicable to the administrative search setting).

The second approach is that the named party allows the search and attacks the validity of the plan in subsequent citation proceedings before the OSHA Review Commission. This procedure has the advantage of allowing the concerned agency to rule on its own challenged regulation before recourse is taken to the federal courts. *See Parisi v. Davidson*, 405 U.S. 34, 37–8, 92 S.Ct. 815, 817–8, 31 L.Ed.2d 17 (1972). Af-

---

**1.** It was stipulated at trial that CPL 2.25B was not promulgated under the Administrative Procedures Act, 5 U.S.C. § 553. The issue is whether the plan is a procedural rule, not subject to § 553, or a substantive rule, thus subject to the § 553 notice and comment requirements.

ter this administrative remedy is exhausted, federal appellate court review is available pursuant to 29 U.S.C. § 660 (1982). *Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768 (5th Cir.1981); *In re Worksite Inspection of Quality Products, Inc.*, 592 F.2d 611 (1st Cir.1979). The criticism of this approach is that although the procedure protects the aggrieved party from citations based on the invalid selection plan, it does not protect against the unreasonable search itself. *Weyerhauser Co. v. Marshall*, 592 F.2d 272, 276 (7th Cir.1979); *Marshall v. Huffhines Steel Co.*, 488 F.Supp. 995, 997 (N.D.Tex.1979), *aff'd* 645 F.2d 288 (5th Cir.1981). For this reason, some courts find this procedure appropriate only where the allegedly unreasonable search has already taken place. *See, e.g., Baldwin Metals Co., Inc.*, 642 F.2d at 774 n. 13.

It is into this Sargasso Sea that the Court must navigate in determining the viability of the Defendants' counterclaim. The Defendants assert that the exclusive method to challenge the validity of the plan is to refuse to allow the inspection and present their case at these contempt proceedings. As has been mentioned above, this is not an exclusive remedy, but only one of two possible approaches. It devolves upon the Court to determine whether the procedure chosen by the Defendants is appropriate in the case at bar.

■ The Court concludes that the latter approach is preferable for purposes of the instant case. To adopt the pre-inspection approach would render the four corners requirement meaningless in review of inspection warrants.[2] The Court cannot conclude that the Supreme Court imposed the warrant requirement on administrative searches only to abandon the four corners requirement, long an integral part of warrant jurisprudence. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Such a position is unsupported by

controlling case law and would further dilute the fourth amendment warrant requirement already weakened by application to administrative searches. *See See v. Seattle*, 387 U.S. 541, 547–8, 87 S.Ct. 1737, 1741–2, 18 L.Ed.2d 943 (1967) (Clark, J., dissenting).

Further, the Tenth Circuit Court of Appeals has provided some guidance on which method of challenge is appropriate. In *Marshall v. Horn Seed Co., Inc.*, 647 F.2d 96, 100 (10th Cir.1981), that Court determined that the four corners requirement applied to review of inspection warrants. Although the Court was not considering a case involving a counterclaim, as in this case, neither did the Court use language indicating that such a case might be an exception to the rule. Indeed, in a case where the defendant chose the post-inspection approach to challenge the validity of the warrant, the Tenth Circuit showed its approval of administrative review by requiring the defendant to exhaust his administrative remedies in the OSHA Review Commission proceedings before invoking the power of the federal courts. *Robert K. Bell Enterprises, Inc. v. Donovan*, 710 F.2d 673, 675 (10th Cir.1983). Thus, the Tenth Circuit seems to have indicated a preference for the post-inspection challenge.

■ The most formidable obstacle the Court must face in adopting a post-inspection challenge as the proper procedure in this case is the charge that such a procedure fails to protect the Defendants against a potentially unconstitutional search. If the Defendants are required to reserve their challenges to the plan for an OSHA Review Commission hearing, they will obviously have to submit to the inspection. However, the Court concludes that the warrant application hearing conducted in this case is sufficient to protect the Defendants' fourth amendment interests. It is axiomatic that the intrusion occasioned

---

**2.** It is interesting to note that, in his order denying the Defendants' Motion to Compel, Magistrate Lindsey characterized the Defendants' counterclaim as a "fishing expedition" designed for the purpose of avoiding the four corners requirement. With that statement the Court is inclined to agree.

by an administrative inspection is much less substantial than the intrusion occasioned by search of a private home, as the relaxed probable cause standard for inspection warrants indicates.[3] *See,* 387 U.S. at 545, 87 S.Ct. at 1740. Further, *Barlow's* is largely concerned with ensuring that inspections scheduled pursuant to a program are in fact "programmed", as distinguished from an arbitrary or harassing selection of a business for inspection. 436 U.S. 312, 98 S.Ct. at 1820; *Donovan v. Wollaston,* 695 F.2d 1, 5 (1st Cir.1982). Thus, given the attenuated fourth amendment intrusion sought to be prevented, the Court can protect the Defendants adequately by reviewing the warrant on the same basis as did the magistrate, that basis being an assurance that OSHA's selection of Hackney for inspection was pursuant to a neutral plan. To provide further review would require the Court to set a higher standard than did the Supreme Court in *Barlow's,* and, given an intrusion that is decidedly less substantial than most intrusions protected by fourth amendment jurisprudence, the Court is unwilling to do so.

Because the Court concludes that a post-inspection challenge to the validity of OSHA's selection plan is preferable to the procedure used by the Defendants in this case, the Defendants' counterclaim is dismissed [4] without prejudice.[5] The only remaining issue for the Court's consideration is whether the inspection warrant obtained by OSHA was issued upon probable cause.

Reviewing courts should show substantial deference to determinations of probable cause made by a magistrate. *Edmondson v. United States,* 402 F.2d 809, 813 (10th Cir.1968). In passing on the magistrate's finding of probable cause, the reviewing court is required to limit its consideration to evidence presented to the magistrate to secure the inspection warrant. *West Point-Pepperell,* 689 F.2d at 959; *Horn Seed Co.,* 647 F.2d at 104. The one exception to this "four corners" rule occurs when the aggrieved party makes a preliminary showing that false evidence was presented to the magistrate, either intentionally or recklessly. *Franks,* 438 U.S. at 158, 98 S.Ct. at 2677.

The scope of review in this case must be confined to the materials presented at the warrant application hearing. Although at trial the Defendants attempted to make a *Franks* showing of false statement, they totally failed to show that any false statement, if in fact made, was made intentionally or recklessly.[6] Thus, the Court will review the magistrate's finding on the same evidence available to the magistrate, with proper deference given as noted in the above authorities.

OSHA submitted an affidavit by Brown and a copy of the selection plan, CPL 2.25B, for the magistrate's consideration. The affidavit gave, *inter alia,* Hackney's Standard Industrial Code, and ex-

---

**3.** The temptation to draw a parallel to the analogous criminal setting is irresistible. The victim of a criminal search warrant rarely, if ever, has an opportunity to challenge the validity of a search warrant before it is executed. It would be anomalous for the victim of the less intrusive commercial inspection to have a better right to challenge the warrant than the victim of the more intrusive search of a private home.

**4.** Implicit in this order of dismissal are an affirmance of the Court's ruling limiting discovery and a determination that evidence outside the four corners of the warrant application should have been excluded. Accordingly, the Court will disregard the extraneous evidence in reviewing the sufficiency of the inspection warrant.

**5.** The Court takes care to note that dismissal is without prejudice to preclude any dispute as to whether the Defendants' claims have been considered on the merits. They have not, and it is left to future OSHA Review Commission proceedings, should they be necessary, to determine the Defendants' challenges to the validity of OSHA's selection plan.

**6.** The Defendants attempted to show that a false statement was made when the magistrate was advised that Hackney belonged to Standard Industrial Classification (SIC) 3443. The Defendants' contention was that Hackney belonged to SIC 3498. Although Hackney's proof that it belongs in the latter group leaves something to be desired, that Court is satisfied that a lack of intent or recklessness disposes of the *Franks* issue.

plained how that code was relevant to the selection plan. Based on these materials, the magistrate concluded that Hackney had been selected pursuant to CPL 2.25B, and that CPL 2.25B represented a general administrative plan for enforcement of OSHA regulations derived from neutral sources, as required by *Barlow's*. The magistrate then issued the warrant.

The Court is of the opinion that the inspection warrant was issued upon probable cause, and thus affirms the ruling of the magistrate. Without detailing the rather lengthy plan in this Opinion, the Court concludes that CPL 2.25B is in fact a general administrative plan for the enforcement of OSHA regulations. The Court further finds that plan is derived from neutral sources; it is difficult to see how one following the plan could be deemed arbitrary. Further, given the testimony received at trial, the Court finds no reason to disturb the magistrate's finding that Hackney was selected pursuant to the plan. Brown's testimony at trial does not cast doubt upon the truth of his assertions in the affidavit.

The Court notes that similar presentations have been held to be sufficient to establish probable cause. In *Donovan v. Wollaston*, 695 F.2d 1 (1st Cir.1982), the Court was particularly impressed by the inclusion of the selection plan in the warrant application. The Court concluded, as does this Court, that the plan negated any idea that the defendant had been selected arbitrarily. *Id.* at 5. Further, the Court held that the affidavit was sufficient to establish that the defendant was selected pursuant to the plan. *Id.* at 6.

As in this case, the defendant in *Wollaston* asserted that the affidavit should explicitly set out the computations used in executing the selection process. The *Wollaston* court rejected such a notion: "We do not see the magistrate as the Secretary's [the Secretary of Labor] auditor." 695 F.2d at 6. This Court is in agreement; as in *Wollaston*, it is enough in this case that the magistrate was persuaded that the enforcement personnel had followed the plan.

The Defendants offer one final challenge to the warrant in that they assert it is too broad in scope. This claim focuses on the fact that the warrant permits use of personal sampling devices. Although the Defendant did present some evidence that Hackney had forbidden use of personal sampling devices due to dangerous incidents involving their use, the Court is unpersuaded that it would be unreasonable to allow OSHA to inspect the plant by this method. The Court need only note that the use of personal sampling devices has heretofore been considered reasonable. *In Re Kast Metals Corp.*, 638 F.2d 42, 46 (8th Cir.1981); *Deering Milliken, Inc. v. OSHRC*, 630 F.2d 1094, 1102–03 (5th Cir. 1980).

Thus, it is the judgment of this Court that the inspection warrant was issued upon probable cause and was not overbroad in scope. Refusal to allow the OSHA Compliance Officer to conduct an inspection of the Enid plant was therefore contempt of this Court. Defendants assert that Schwedland should not be found in contempt, as he merely performed a service for Hackney; however, the Court need only note the prominent role played by Schwedland in preventing the OSHA inspection to dismiss this contention. Accordingly, both Schwedland and Hackney are adjudged in contempt of court. The Court orders that Schwedland be committed to the custody of the United States marshal and that Hackney pay a civil fine of $1,000 per day, both beginning March 30, 1984 until the Defendants purge themselves of said contempt.